Rhonda Sue WESLEY, Plaintiff,

v.

DON STEIN BUICK, INC.; Don Stein; Jerry Kaplan; Multiple Unnamed Sales Agents of Don Stein Buick–Isuzu, Inc.; T.A. Stovall; One Unnamed Desk Clerk of Overland Park, Kansas Police Department; and the City of Overland Park, Kansas, Defendants.

No. 97–2271–JWL.

United States District Court, D. Kansas.

March 10, 1999.

Larry D. Coleman, Larry Delano Coleman, P.C., Kansas City, MO, for Rhonda Sue Wesley, plaintiff.

Rhonda Sue Wesley, Kansas City, MO, pro se.

Lawrence L. Ferree, III, Kirk Thomas Ridgway, Ferree, Bunn & O'Grady, Chtd., Overland Park, KS, Peter John Vanderwarker, Blackwell Sanders Peper Martin, LLP, Overland Park, KS, James D. Conkright, Sanders Conkright & Warren LLP, Kansas City, MO, for Don Stein Buick, Inc., Don Stein, Jerry Kaplan, Multiple Unnamed Sales Agents, of Don Stein Buick–Isuzu, Inc., defendants.

Lawrence L. Ferree, III, Kirk Thomas Ridgway, Ferree, Bunn & O'Grady, Chtd., Overland Park, KS, for American Isuzu Motors, Inc., defendant.

Robert J. Harrop, David C. Vogel, Lathrop & Gage L.C., Kansas City, MO, Yvonne M. Warlen, Shank, Laue & Hamilton, P.C., Kansas City, MO, for General Motors Corp.

Michael R. Santos, City of Overland Park, Legal Department, Overland Park, KS, Daniel B. Denk, Michael M. Shultz, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for T. A. Stovall, One Unnamed Desk Clerk, John M. Douglass, City of Overland Park, Kansas, defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendants arising out of an incident which occurred at the Don Stein Buick dealership in Overland Park, Kansas, and plaintiff's subsequent efforts to have the incident investigated, charges filed and individuals prosecuted by various authorities. In prior memorandums and orders, the court dismissed multiple claims and defendants. See Wesley v. Don Stein Buick, Inc., 996 F.Supp. 1312 (D.Kan.1998); Wesley v. Don Stein Buick, Inc., 996 F.Supp. 1299 (D.Kan.1998); Wesley v. Don Stein Buick, Inc., 985 F.Supp. 1288 (D.Kan. 1997).

Two groups of defendants remain parties in this action—the "Don Stein Defendants," including Don Stein Buick, Inc.; Don Stein; Jerry Kaplan; and Multiple Unnamed Sales Agents of Don Stein Buick–Isuzu, Inc.; and the "Overland Park Defendants," including the City of Over-land Park, Officer T.A. Stovall and One Unnamed Desk Clerk. Plaintiff's remaining claims include claims against the Don Stein Defendants for violations of 42 U.S.C. §§ 1981, 1983, 1985, 1986, 13981 (the Violence Against Women Act) and common law assault[1] and claims against the Overland Park Defendants for violations of 42 U.S.C. § 1983.[2] This matter is presently before the court on the Don Stein Defendants' motion for summary judgment (doc. # 219) and the Overland Park Defendants' motion for summary judgment (doc. # 217). For the reasons set forth below, defendants' motions are granted and plaintiff's complaint is dismissed in its entirety.

## I. Facts[3]

Plaintiff Rhonda Sue Wesley visited the Don Stein Buick, Inc. dealership on October 11, 1996 to obtain price information on various Buick automobiles. According to plaintiff, the sales agents at the dealership did not offer assistance to plaintiff; rather, she was forced to seek out assistance from an agent. At some point during her encounter with this agent, the agent began asking plaintiff questions she believed were "irrelevant," including plaintiff's name, address and other "personal" information. Plaintiff averred that after she refused to answer the agent's questions, the agent "became belligerent in tone and gestures." Plaintiff then returned to the showroom and complained to a member of management about the "rude treatment" she had received from the sales agent. The individual to whom plaintiff complained then directed another sales agent to assist plaintiff. This agent began showing plaintiff a variety of available Buicks.

1. With respect to Don Stein and Jerry Kaplan, plaintiff asserts only that these individuals are vicariously liable for the other Don Stein Defendants' violations of § 1981, § 13981 and for common law assault.

2. Plaintiff initially asserted a variety of other claims against the Overland Park Defendants. She has addressed only her § 1983 claim in her papers and, accordingly, the court deems all other claims against the Overland Park Defendants abandoned and grants defendants' motion for summary judgment with respect to all other claims.

3. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

Soon thereafter, the unsuspecting agent began seeking "personal information" from plaintiff. Plaintiff advised the agent that the information requested was "not of his concern." Plaintiff then asked the agent to write down the prices of the automobiles he had shown to her. At this point, the agent returned to the showroom and left plaintiff in the lot. He did not return. Shortly thereafter, according to plaintiff's testimony, two other agents "suddenly burst" from the showroom and rushed toward plaintiff "in a threatening manner with arms flailing, writing instruments in hand," shouting and yelling. The agents demanded that plaintiff leave the premises.

Plaintiff found the nearest telephone and called 911. The Overland Park Police Department (OPPD) dispatched Officers T.A. Stovall and R. Staples to the dealership. In addition, Sergeant Kostelac of the OPPD went to the dealership when he heard dispatch send Officers Stovall and Staples to the scene. After Sergeant Kostelac and the Officers arrived at the dealership, plaintiff advised them that the Don Stein sales agents had been unwilling to assist her and had been rude to her. Plaintiff did not inform Sergeant Kostelac or the Officers that she had been subject to an assault. Sergeant Kostelac advised plaintiff that she could write a statement about her experience at the dealership and that the statement would be attached to a brief information sheet on the call. At that point, Officer Staples and Sergeant Kostelac went into the dealership. Officer Stovall remained outside with plaintiff while plaintiff wrote her statement. Officer Stovall told plaintiff she could obtain a copy of her written statement at the OPPD on October 14, 1996.

On October 14, 1996, plaintiff went to the Records Unit of the OPPD to obtain a copy of the police report and/or the written statement she had given to Officer Stovall. The desk clerk refused to give plaintiff a copy of her statement. Plaintiff left with the desk clerk a typewritten statement (referred to by plaintiff as an addendum to her handwritten statement from October 11, 1996) addressed to Officer Stovall. In the addendum, plaintiff set forth additional information concerning her visit to the dealership, including allegations that certain sales agents had assaulted her. One week later, plaintiff called the OPPD and left a message for Officer Stovall to return her call. Officer Stovall did not respond to plaintiff's addendum of October 14, 1996 and did not return plaintiff's telephone call.

On December 17, 1996, plaintiff sent a letter to Chief of Police John M. Douglass in which she complained that she had not received a copy of her statement and set forth her belief that the incident at the dealership constituted a criminal assault. In response, Chief Douglass advised plaintiff that she should have received a copy of her statement and apologized to plaintiff for the error and any inconvenience. He enclosed with his written response a copy of plaintiff's statement and further advised her to contact the prosecutor's office if she had any questions concerning the pursuit of criminal charges against the dealership or its agents.

In April 1997, plaintiff sent another letter to Chief Douglass. In this letter, plaintiff complained that the OPPD and Officer Stovall failed to act upon her allegations that she had been the victim of a criminal assault. Captain Stephen E. Ford of OPPD's Administrative Services Division responded to plaintiff's letter. In his letter, Captain Ford explained to plaintiff that her case had been reviewed in January 1997 by four members of the prosecutor's office and a patrol division supervisor, who had determined that there was insufficient evidence to indicate that a criminal offense had occurred. The OPPD did not take any further action concerning plaintiff's problems with the dealership or its sales agents.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Plaintiff's Claims Against the Unnamed Defendants

Defendants move for summary judgment on plaintiff's claims against the Multiple Unnamed Sales Agents and the Unnamed Desk Clerk on the grounds that these claims are barred by the applicable statutes of limitations. Specifically, defendants contend that, although plaintiff filed her complaint within the limitations period, she nonetheless failed to identify the unnamed defendants within the limitations period and, accordingly, any attempt by plaintiff to replace the unnamed defendants with a new party would be futile. As set forth in more detail below, the court agrees. Plaintiff's claims against the unnamed defendants must be dismissed.

Plaintiff's claims under § 1981, § 1983, § 1985 and § 13981 are best characterized as claims for injuries to personal rights and, accordingly, borrow the two-year statute of limitations set forth in K.S.A. § 60–513(a)(4). *See, e.g., Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1111 n. 10 (10th Cir.1998) ("Injuries claimed under § 1981 are best characterized as injuries to personal rights, and, thus, borrow the statute of limitations period for personal injury actions."); *Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1532 n. 12 (10th Cir.1995) ("[I]njuries claimed under § 1981, as well as those under ... § 1983, are best characterized as injuries to personal rights, and, thus, borrow the statute of limitations period for personal injury actions."); *Crosswhite v. Brown,* 424 F.2d 495, 496 & n. 2 (10th Cir.1970) (state statute of limitations for personal injury actions applies to § 1985 claims). Plaintiff's claim under § 1986 and her claim for common law assault are governed by a

one-year limitations period. *See* 42 U.S.C. § 1986 (expressly providing a one-year limitations period); K.S.A. § 60–514(b) (one-year limitations period for common law assault claim).

■ The events giving rise to plaintiff's claims against the unnamed defendants occurred in October 1996. Although plaintiff filed her complaint within one year after her claims accrued,[4] she has failed to replace the unnamed defendants within the limitations period. As the Tenth Circuit has recognized, the replacement of a John Doe defendant with a named party constitutes the substitution of a party rather than the correction of a misnomer. *See Watson v. Unipress, Inc.*, 733 F.2d 1386, 1389 (10th Cir.1984). In that sense, it is like the filing of a new lawsuit. *See Henry v. FDIC*, 168 F.R.D. 55, 58 (D.Kan.1996) (citing *Graves v. General Ins. Corp.*, 412 F.2d 583, 585 (10th Cir.1969)). Moreover, this court has previously held that an amended complaint replacing an unnamed defendant with a named party does not relate back to the date on which the original complaint was filed because the naming of John Doe as a defendant does not constitute a mistake in identification. *See Henry*, 168 F.R.D. at 60 (noting that the First, Second, Fourth, Sixth and Seventh Circuits have reached the same conclusion). *See also Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1226–27 (10th Cir.1991) (amended complaint replacing John Doe defendant with named party did not relate back to filing of original complaint because plaintiffs never attempted to serve named defendant until after the statute of limitations expired and plaintiff claimed no other basis of notice to named defendant). Thus, even if plaintiff attempted to substitute named parties for the unnamed defendants prior to trial, such an attempt would be futile. The proposed amendment would not date back to the filing of the original complaint and, because more than two years have expired since plaintiff's claims accrued, any amendment would be barred by the applicable statutes of limitations. Defendants' motions for summary judgment with respect to the unnamed defendants must be granted.

## IV. Plaintiff's Claim Against Officer Stovall

Having determined that plaintiff's claim against the Unnamed Desk Clerk is barred by the statute of limitations, the court turns to address plaintiff's claim against the only remaining Overland Park Defendant—Officer T.A. Stovall.[5] Plaintiff contends that defendant Stovall discriminated against her on the basis of her race[6] in violation of the Equal Protection Clause by failing to investigate her complaint against the dealership and its agents, failing to provide a copy of her written statement, failing to return her phone call, and failing to respond to her October 14 addendum. Defendant Stovall moves for summary judgment on the grounds that plaintiff has failed to show that defendant Stovall treated plaintiff any differently than she treated other individuals. As set forth below, the court agrees with defendant Stovall and, accordingly, grants summary judgment in favor of defendant Stovall on plaintiff's § 1983 equal protection claim.

---

4. Plaintiff filed her complaint in June 1997.

5. In the pretrial order, plaintiff preserved one claim against the City of Overland Park—a claim under § 1981. She has failed to address this claim in her papers, however, and the court thus deems this claim abandoned. Summary judgment in favor of the City is granted.

6. In the pretrial order, plaintiff asserts that Officer Stovall discriminated against her on the basis of her "race and/or class." The court cannot decipher from the other allegations in the pretrial order or plaintiff's papers the particular "class" to which plaintiff refers. Thus, the court focuses its analysis of plaintiff's equal protection claim on plaintiff's allegations that Officer Stovall discriminated against her on the basis of her race. In any event, the court notes that the record is devoid of any evidence that Officer Stovall treated plaintiff differently than she treated anyone of any other class.

■ The Equal Protection Clause is triggered only when the government treats someone differently than another who is similarly situated. *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1266 (10th Cir.1998) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir.1991)). Thus, to assert a viable equal protection claim, plaintiff must first make a threshold showing that she was treated differently from others who were similarly situated to her. *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir.1998) (citing *Gehl Group v. Koby*, 63 F.3d 1528, 1538 (10th Cir.1995)). Plaintiff has not made this showing. Specifically, plaintiff has not come forward with any evidence whatsoever that defendant Stovall treated non–African–Americans (or anyone else) differently than she treated plaintiff. Defendant Stovall averred that she handled plaintiff's complaint in the same manner as she handled complaints received from other individuals. Plaintiff does not controvert this fact. Moreover, plaintiff has not offered any evidence that defendant Stovall, when faced with complaints made by non–African–Americans similar in nature to plaintiff's complaint, provided those individuals with copies of any written statements, returned any phone calls, responded to any letters, or otherwise handled such complaints differently. Absent any information about defendant Stovall's interactions with or treatment of non–African–Americans, plaintiff cannot make the required threshold showing that she was treated differently from others similarly situated to her. Her equal protection claim therefore fails and summary judgment in favor of defendant Stovall is warranted. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir.1998) (district court properly granted summary judgment on plaintiff's § 1983 equal protection claim where plaintiff did not show how he was treated differently from others similarly situated); *Barney,* 143 F.3d at 1312–13 (same); *Gehl Group,* 63 F.3d at 1538 (same).

## V. Plaintiff's Claims Against Don Stein Buick, Inc.

Plaintiff asserts claims against Don Stein Buick, Inc. under § 1981, § 1983, § 1985, § 1986 and § 13981. She also asserts that Don Stein Buick, Inc. is vicariously liable for the alleged assault committed by its sales agents. As set forth in more detail below, the court concludes that Don Stein Buick, Inc. is entitled to summary judgment on all of plaintiff's claims.

### A. Section 1981

■ Section 1981 addresses racial discrimination in contractual relationships. As amended by the Civil Rights Act of 1991, the statute reads as follows:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kinds, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(a)–(c). By its language, then, § 1981 establishes four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and

punishments. *See Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262, 1267 (10th Cir. 1989).[7] Plaintiff alleges that Don Stein Buick, Inc. interfered with her right to make and enforce contracts.

Although the Tenth Circuit has not had the opportunity to analyze a § 1981 claim in the context of a retail transaction,[8] it has held that a § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities. *See Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262, 1267 (10th Cir.1989). Several federal courts have applied this principle to § 1981 claims arising out of retail transactions. *See, e.g., Morris v. Office Max, Inc.,* 89 F.3d 411 (7th Cir.1996); *Ackaa v. Tommy Hilfiger Co.,* No. CIV.A. 96–8262, 1998 WL 136522 (E.D.Pa. Mar.24, 1998); *Hampton v. Dillard Dep't Stores, Inc.,* 985 F.Supp. 1055 (D.Kan.1997); *Sterling v. Kazmierczak,* 983 F.Supp. 1186 (N.D.Ill.1997); *Lewis v. J.C. Penney Co.,* 948 F.Supp. 367 (D.Del.1996). The court looks to these cases for guidance in analyzing plaintiff's § 1981 claim.

In *Office Max,* the plaintiffs, two African–American men, entered an Office Max store to purchase certain office supplies. 89 F.3d at 411–12. Within minutes, the store's assistant manager telephoned the police department to report "two male blacks acting suspiciously." *Id.* at 412. The police department immediately dispatched two officers (who were already in the area at the time) to the store. *Id.* In the meantime, one of the plaintiffs, Darryl Morris, was looking for telephone message pads. *Id.* A store clerk directed him to the proper location, and Mr. Morris picked up several pads. *Id.* While Mr. Morris was paying for the items, the other plaintiff, Leggitt Nailor, continued to walk around the store. *Id.* After making his purchases, Mr. Morris rejoined Mr. Nailor, and the two began to examine time-stamp machines. *Id.* By this time, the officers had arrived at the store and the assistant manager directed the officers toward the plaintiffs. *Id.* The officers approached the two plaintiffs and, after a brief encounter, the officers left the store. *Id.*

Plaintiffs filed suit against Office Max under § 1981 alleging that the store had interfered with their right to make further purchases or to enter into a retail contract. *Id.* Affirming the district court's grant of summary judgment for Office Max, the Seventh Circuit held that the plaintiffs failed to offer specific facts showing that Office Max deprived them of the right to make and enforce a contract. *See id.* at 414. In response to plaintiffs' argument that Office Max interfered with their right to purchase merchandise (*i.e.,* the time stamps plaintiffs were examining when approached by the police), the court emphasized that plaintiffs had "produced no evidence to suggest that they had anything more than a general interest in that merchandise." *See id.* In other words, according to the court, the plaintiffs "failed to demonstrate that they would have attempted to purchase the time stamps" if they had not been approached by the police. *See id.* In essence, the court concluded that the plaintiffs "never sought to enter into a contractual relationship with Office Max" because they did not attempt to make any further purchases. *See id.*

■ The court finds the reasoning of *Office Max* persuasive. In reaching its decision, the Seventh Circuit reiterated that the crux of a § 1981 claim is "the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Id.* at 414–15. Because this

---

7. Although the *Phelps* decision was rendered prior to the 1991 amendments to § 1981, the portion of § 1981 from which the Circuit derived the principles set forth in *Phelps* remained unchanged after the amendments and is set forth in subsection (a) of post-amendment § 1981.

8. As one court has noted, § 1981 litigation typically involves the right to make and enforce contracts of employment whereas claims involving retail transactions have been infrequent. *See Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir.1996).

principle lies at the center of the Tenth Circuit's opinion in *Phelps v. Wichita Eagle-Beacon* (indeed, the Seventh Circuit cited the *Phelps* decision in reaching its conclusion in *Office Max* ), the court believes that the Tenth Circuit would conclude that a plaintiff asserting a § 1981 claim in the context of a retail transaction must demonstrate that he or she was actually prevented from making a purchase or that he or she would have attempted to make a purchase if the defendant had not interfered. Moreover, virtually all federal courts that have analyzed § 1981 claims in the retail merchandise context have required plaintiffs to show that they were actually prevented from making a purchase. *See, e.g., Ackaa v. Tommy Hilfiger Co.*, No. CIV.A. 96–8262, 1998 WL 136522, at *5 (E.D.Pa. Mar.24, 1998) ("A § 1981 claim must allege that the plaintiff was actually prevented, not merely deterred, from making a purchase or receiving service after attempting to do so."); *Sterling v. Kazmierczak*, 983 F.Supp. 1186, 1192 (N.D.Ill.1997) (granting defendants' motion to dismiss plaintiff's § 1981 claim where plaintiff failed to allege that he ever found the air rifle cartridges for which he was looking, failed to allege that he was prepared to buy such cartridges before he left the store, and failed to allege that he had the cartridges "in hand" when confronted by police officer).

In light of the foregoing standards, the court concludes that plaintiff has failed to demonstrate that she was denied the right to make or enforce a contractual relationship with defendant Don Stein Buick, Inc. The record establishes that plaintiff visited the dealership for the purpose of obtaining general price information about a variety of automobiles. There is no evidence in the record that plaintiff intended to purchase a car during her visit. Although plaintiff alleges in her brief that she was

prepared to buy a car upon her visit to the dealership, there is simply no Rule 56 evidence in the record to support plaintiff's allegation. In fact, the record demonstrates that plaintiff never purchased a car. Rather, her parents purchased a car from another dealership several weeks after plaintiff's visit to Don Stein Buick, Inc. Plaintiff did not contribute to the purchase price of the car and the car is not titled in her name. These facts demonstrate that plaintiff, during her visit to Don Stein Buick, had nothing more than a general interest in the automobiles and that she was simply browsing for a potential automobile that her parents might purchase at some later date. *See Sterling*, 983 F.Supp. at 1192 (allegations establishing that plaintiff was simply "browsing about the store" insufficient to withstand motion to dismiss § 1981 claim). Thus, plaintiff has not even established that the incident with the sales agents deterred her from a future, potential contractual relationship. At most, the incident may have deterred plaintiff's parents from entering into a contractual relationship with Don Stein Buick, Inc. In the absence of any evidence suggesting that plaintiff would have attempted to purchase a car from the dealership if the agents had not chased her away, Don Stein Buick, Inc.'s motion for summary judgment on plaintiff's § 1981 claim must be granted.[9]

## B. Section 1983

■ Plaintiff also asserts a claim under 42 U.S.C. § 1983 against Don Stein Buick, Inc. for its alleged conspiracy with the Overland Park Police Department (OPPD) to deprive plaintiff of her right to engage in commerce, her right to contract, her right to privileges and immunities, and her right to equal protection of the laws. In support of her claim, plaintiff alleges that agents of Don Stein Buick, Inc., on the day

---

9. To hold otherwise would "come close to nullifying the contract requirement of section 1981 altogether, thereby transforming the statute into a general cause of action for race discrimination in all contexts." *Lewis v. J.C. Penney Co.*, 948 F.Supp. 367, 371–72 (D.Del.

1996) (rejecting theory that implied contract exists between defendant and the public to the effect that all who enter the premises of defendant will be treated equally regardless of race).

of the incident, conferred with officers of the OPPD inside the dealership—outside the presence and hearing of plaintiff. Plaintiff further alleges that agents of Don Stein Buick, Inc. are personally acquainted with and have sold cars to officers and employees of the OPPD. As set forth below, these allegations are insufficient to demonstrate the requisite "joint action" for purposes of establishing Don Stein Buick, Inc.'s liability under § 1983. Accordingly, the court grants summary judgment in favor of Don Stein Buick, Inc. on plaintiff's § 1983 claim.

As the Supreme Court recently reiterated, § 1983 "basically seeks 'to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights' and to provide related relief." *Richardson v. McKnight,* 521 U.S. 399, 117 S.Ct. 2100, 2103, 138 L.Ed.2d 540 (1997) (quoting *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (citing *Carey v. Piphus,* 435 U.S. 247, 254–257, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978))). It imposes liability only where a person acts "under color" of a state "statute, ordinance, regulation, custom, or usage." *Id.* (quoting 42 U.S.C. § 1983). Nonetheless, § 1983 can sometimes impose liability upon a private individual or entity under certain narrowly prescribed circumstances. *Id.* (citing *Wyatt,* 504 U.S. at 162, 112 S.Ct. 1827; *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

 It is uncontroverted that defendant Don Stein Buick, Inc. is a private actor for purposes of analyzing plaintiff's § 1983 claim. In order to hold a private actor liable under § 1983, "it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State." *Pino v. Higgs,* 75 F.3d 1461, 1465 (10th Cir.1996) (quoting *Lee v. Town of Estes Park,* 820 F.2d 1112, 1114 (10th Cir.1987)). No such showing has been made here. Plaintiff's allegations of a conspiracy between Don Stein Buick, Inc. and the OPPD suggest that she is relying on the "joint action" test to establish defendant's liability under § 1983. *See Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Under this test, a § 1983 claim may arise when a private actor conspires with a state actor to deprive a person of constitutional rights under color of state law. *See Dixon v. City of Lawton,* 898 F.2d 1443, 1449 n. 6 (10th Cir.1990) (citing *Dennis,* 449 U.S. at 29, 101 S.Ct. 183; *Adickes,* 398 U.S. at 149–52, 90 S.Ct. 1598). In analyzing defendant's motion for summary judgment on this claim, the court examines "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *See Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1453 (10th Cir.1995).

Plaintiff here has not even alleged facts (much less come forward with evidence) from which a reasonable jury could conclude that the actions of Don Stein Buick, Inc. or its agents stemmed from any concerted action between Don Stein Buick, Inc. and officers of the OPPD. Rather, the record indicates that the conduct giving rise to plaintiff's claims against Don Stein Buick, Inc. occurred long before the police even arrived at the dealership. In fact, plaintiff contacted the police only after the sales agents allegedly treated plaintiff rudely and attempted to chase her off the lot. Moreover, the mere fact that sales agents of Don Stein Buick may have conferred with police officers outside plaintiff's presence upon the officers' arrival at the dealership is simply not sufficient to show that the sales agents and police officers shared "a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action" or that a "substantial degree of cooperative action" existed between the sales agents and police officers. *See Gallagher,* 49 F.3d at 1454–55.

In short, there is no evidence in the record from which a reasonable jury could conclude that Don Stein Buick, Inc. and the OPPD acted in concert to deprive plaintiff of her constitutional rights. Plaintiff's conspiracy allegations, conclusory and speculative at best, are insufficient to survive Don Stein Buick, Inc.'s motion for summary judgment. *See Gallagher,* 49 F.3d at 1456 (affirming grant of summary judgment where evidence was insufficient to establish joint action between state and private entities); *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."). Accordingly, the motion is granted with respect to plaintiff's § 1983 claim.

### C. Section 1985(3)

■■■ Plaintiff alleges that the sales agents of Don Stein Buick, Inc. conspired to deprive plaintiff of her right to privileges and immunities, her right to engage in interstate commerce and her right to contract. Although § 1985(3) does not create any substantive rights, it provides a remedy when individuals conspire to deprive a member of a protected class of equal protection of the laws or equal privileges and immunities under the laws. *See Gallegos v. City & County of Denver,* 984 F.2d 358, 362 (10th Cir.1993) (citing *Dixon v. City of Lawton,* 898 F.2d 1443, 1448 (10th Cir.1990)). To prove a conspiracy in violation of § 1985(3), plaintiff must show the existence of a conspiracy intended to deny her equal protection under the laws or equal privileges and immunities of the laws resulting in an injury or deprivation of federally protected rights, and an overt act in furtherance of the object of the conspiracy. *Murray v. City of Sapulpa,* 45 F.3d 1417, 1423 (10th Cir.1995) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102– 03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Ward v. St. Anthony Hosp.,* 476 F.2d 671, 676 (10th Cir.1973)). Plaintiff must also demonstrate that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." *Bray v. Alexandria Wom-*

*en's Health Clinic,* 506 U.S. 263, 267–68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (quoting *Griffin,* 403 U.S. at 102, 91 S.Ct. 1790). As set forth below, plaintiff has failed to come forward with any evidence that "invidiously discriminatory animus" lay behind the sales agents' actions. Thus, summary judgment on plaintiff's § 1985(3) claim is appropriate.

■■■ As the Supreme Court has stated, the "invidiously discriminatory animus" element requires "that the defendant have taken his action 'at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'" *Id.* at 275–76, 113 S.Ct. 753 (quoting *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). Although plaintiff asserts in her papers that the sales agents "were motivated by some racial and/or class-based, invidiously discriminatory animus . . . not directed at similarly situated white automobile shoppers," plaintiff has offered no facts to support this allegation—a deficiency Don Stein Buick, Inc. highlights in its papers. In an effort to buttress her bare allegations of an invidiously discriminatory animus, plaintiff directs Don Stein Buick and the court only to allegations set forth in plaintiff's complaint. To satisfy her burden on summary judgment, however, plaintiff may not simply rely on conclusory allegations in her complaint; rather, she must come forward with specific facts showing a genuine issue for trial as to those dispositive matters for which she carries the burden of proof. *See* Fed. R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations [in her pleadings], but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *Craig v. Eberly,* 164 F.3d 490, 493 (10th Cir.1998) (citation omitted).

Here, plaintiff relies only on unsupported allegations in her papers and concluso-

ry allegations set forth in her complaint. She fails to direct the court to any evidence in the record suggesting that the defendants were motivated by a class-based discriminatory animus. In the absence of such evidence, the court must grant summary judgment in favor of Don Stein Buick, Inc. on plaintiff's § 1985(3) claim.

### D. Section 1986

Under § 1986, persons who have knowledge of a § 1985 conspiracy and fail to exercise any power they might have to prevent it may be liable to the party injured by the conspiracy. *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1124 n. 5 (10th Cir.1994). As set forth above, however, plaintiff has not established a claim under § 1985, which is a prerequisite to a claim under § 1986. Thus, summary judgment is appropriate on plaintiff's § 1986 claim. *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990).

### E. Section 13981

█ Plaintiff also alleges that the Don Stein Defendants violated the Violence Against Women Act of 1994, 42 U.S.C. § 13981. This act provides a cause of action to victims of crimes of violence when those crimes are "motivated by gender." *Id.* § 13981(c). According to the statute, a " "crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id.* § 13981(d). The statute expressly excludes non-gender related violence from its purview:

> Nothing in this section entitled a person to a cause of action ... random acts of violence unrelated to gender or for acts that cannot be demonstrated, by a preponderance of the evidence, to be motivated by gender....

*Id.* § 13981(e)(1).

In an earlier Memorandum and Order, the court concluded that plaintiff, at least for purposes of analyzing defendants'

12(b)(6) motion, had satisfied the "crime of violence" aspect of her claim by alleging facts sufficient to constitute the felony of aggravated assault. *See Wesley v. Don Stein Buick, Inc.*, 985 F.Supp. 1288, 1300 (D.Kan.1997). The court, however, concluded that plaintiff had not sufficiently alleged that the purported "crime of violence" was "motivated by her gender." *See id.* Rather, plaintiff simply alleged that she is female. *See id.* In light of this deficiency in her claim, and considering plaintiff's pro se status at that time, the court permitted plaintiff to amend her complaint to the extent the defect could be cured.

In her amended complaint and in her papers, plaintiff alleges that the following facts support a finding that the purported assault was motivated by gender:

> [T]he aggravated assault was predicated on gender distinctions motivated by the defendants' knowledge that the plaintiff could not garner sufficient physical strength nor reasonable ability to defend herself against the charging and hostile Multiple sales agents. These agents were physically larger and greater in number than she. All of these defendants were male actors who projected serious gestures of violence and an intentional show of physical force directed towards the plaintiff. The defendants' actions conveyed that their obvious advantage in strength and numbers, with the intent to intimidate the plaintiff, rendered her powerless to protect herself and her property.

Plaintiff also asserts that she was the only female customer at the dealership at the time of the alleged assault. In support of its motion, Don Stein Buick, Inc. maintains that these bald allegations are insufficient to demonstrate that the alleged assault was motivated by plaintiff's gender. The court agrees.

As with plaintiff's claim under § 1985, she supports her § 13981 claim with references to her amended complaint and bare allegations in her papers. As set forth in connection with plaintiff's 1985 claims,

however, these allegations are insufficient to survive a properly supported motion for summary judgment. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations [in her pleadings], but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *Craig v. Eberly,* 164 F.3d 490, 493 (10th Cir.1998) (citation omitted). Plaintiff has offered no proper Rule 56 evidence suggesting that the actions of any sales agents of Don Stein Buick, Inc. were motivated by plaintiff's gender. *Compare Crisonino v. New York City Housing Authority,* 985 F.Supp. 385, 391 (S.D.N.Y.1997) (evidence that perpetrator called victim a "dumb bitch" and later shoved her to the ground was sufficient, on § 13981 claim, to allow reasonable jury to conclude that perpetrator's actions were motivated by gender). In the absence of such evidence, summary judgment in favor of Don Stein Buick, Inc. is appropriate.

### F. Assault

■■■■■ Plaintiff also urges that Don Stein Buick, Inc. should be held vicariously liable for alleged assault committed by its sales agents. Under Kansas law, Don Stein Buick, Inc. can be held liable for an assault by its agents only if the agents, at the time of the alleged assault, were acting within the scope of their authority and within the course of their employment, or in an effort to further Don Stein Buick's business. *See Williams v. Community Drive-in Theater, Inc.,* 214 Kan. 359, 366, 520 P.2d 1296 (1974). An employee is acting within the scope of his or her employment if the employee is performing services for which the employee has been employed or is doing anything reasonably incidental to the employment. *Commerce Bank of St. Joseph, N.A. v. State,* 251 Kan. 207, 210, 833 P.2d 996 (1992) (citing PIK Civ.2d 7.04). The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether

such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it. *Id.*

■■■■■ If, on the other hand, the assault was motivated by entirely personal reasons of the sales agents, such as malice or spite or by a desire to accomplish some unlawful purpose, and does not have for its purpose the furtherance of the employer's business, it will be considered personal to the sales agents and Don Stein Buick, Inc. will not be held liable. *See Williams,* 214 Kan. at 366, 520 P.2d 1296; *accord Hollinger v. Jane C. Stormont Hosp. & Training Sch. for Nurses,* 2 Kan.App.2d 302, 312, 578 P.2d 1121 (1978). In determining whether an assault by an employee is of a personal nature and therefore unforeseeable, Kansas courts analyze whether the employment is of such a nature that the use of force may be contemplated to protect the interest of the employer. *Compare Williams,* 214 Kan. at 367–68, 520 P.2d 1296 (reversing grant of summary judgment for employer on vicarious liability theory where facts demonstrated that duties of drive-in theater employee who shot patron contemplated the use of guns to preserve order if necessary) *and Beggerly v. Walker,* 194 Kan. 61, 64–65, 397 P.2d 395 (1964) (plaintiff stated claim against defendant for assault under theory of respondeat superior where employee's duties involved preservation of peace and maintaining order on employer's premises) *with Hollinger,* 2 Kan.App.2d at 311–12, 578 P.2d 1121 (affirming grant of summary judgment for employer on plaintiff's assault claim under respondeat superior theory where conduct of employee, a janitor, could not reasonably have been foreseen from the nature of his employment or the manner in which he performed his duties).

■■■ Applying these principles to the uncontroverted facts in this case, the court concludes that the sales agents who allegedly assaulted plaintiff were not acting within the scope of their employment or in furtherance of Don Stein Buick's business. Significantly, the record before the court is devoid of any evidence concerning the

duties of a sales agent employed by Don Stein Buick, Inc. In the absence of such evidence, no reasonable jury could conclude that sales agents at Don Stein Buick are expected to take measures necessary to preserve order on the dealership's lot or serve any other function from which the agents' conduct here might have been "fairly foreseen." *See Williams,* 214 Kan. at 367, 520 P.2d 1296 ("[W]here an employee's duties involve the preservation of peace and order on the master's premises, or the protection of the master's property from loss or vandalism, an inference arises that the servant is expected to use reasonable force in the performance of his duties and, consequently, the use of force falls within the scope of the servant's employment."). Along these same lines, there is nothing inherent in the car salesperson position, in and of itself, such that a dealership must contemplate the use of force by a salesperson. *Compare id.* (recognizing that bartenders, cashiers, managers of restaurants, managers and clerks of hotels and inns, and other similar employees are typically expected to maintain order about the premises and, accordingly, the employers of these persons must contemplate the use of force in certain circumstances).

Moreover, there is simply no evidence in the record suggesting that the agents acted out toward plaintiff in an effort to further Don Stein Buick's business. If, for example, plaintiff had come forward with evidence that the agents chased her away because they believed that, for whatever reason, plaintiff's presence at the dealership was having a "chilling effect" on other customers, such evidence might give rise to an inference that the agents were acting in furtherance of Don Stein Buick's business. There is no such evidence in the record before the court. In the absence of such evidence, or any other evidence suggesting that the agents acted in furtherance of the dealership's business, the court must conclude that the agents stepped aside from the dealership's business to inflict upon the plaintiff their personal malice and spite. Accordingly, the court finds as a matter of law that Don Stein Buick,

Inc. is not liable under a theory of respondeat superior.

## VI. Plaintiff's Claims Against Don Stein and Jerry Kaplan

Finally, plaintiff claims that defendants Don Stein and Jerry Kaplan, as shareholders of Don Stein Buick, Inc., are vicariously liable for the unlawful acts of the sales agents of Don Stein Buick, Inc. The court need not address whether plaintiff can state a viable claim against these shareholders based on the doctrine of vicarious liability (or, as plaintiff suggests, the doctrine of "shareholder liability"). Because plaintiff's claims against these individuals derive from plaintiff's claims against the other Don Stein Defendants, the court's grant of summary judgment on all of plaintiff's claims against the other Don Stein Defendants mandates the dismissal of plaintiff's claims against defendants Don Stein and Jerry Kaplan.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Overland Park Defendants' motion for summary judgment (doc. # 217) is **granted** and the Don Stein Defendants' motion for summary judgment (doc. # 219) is **granted.** Plaintiff's complaint is dismissed in its entirety.

**IT IS SO ORDERED.**