No. 66,744

COMMERCE BANK OF ST. JOSEPH, N.A., *Appellant*, v. STATE OF KANSAS, *et al.*, *Appellee*.

(833 P.2d 996)

Opinion filed May 22, 1992.

*Mark S. Gunnison*, of McDowell, Rice & Smith, of Overland Park, argued the cause and was on the briefs for appellant.

*Nancy L. Ulrich*, assistant attorney general, argued the cause, and *Carl A. Gallagher*, assistant attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Commerce Bank of St. Joseph, N.A., (Commerce Bank) lent money to a licensed public warehouse, Twombly Grain Company, Inc., (Twombly Grain) for grain storage. The bank held, as collateral, warehouse receipts issued on company-owned grain. Grain shortages were concealed by the grain company for many years and the bank loans were not repaid. When the shortages were discovered, in addition to suing Twombly Grain, Commerce Bank sued the Kansas State Grain Inspection Department (KSGID) and its chief warehouse examiner, Saverio Reda, claiming its damages occurred because Reda accepted money and warned the grain company when unannounced, "surprise" grain department audits were going to occur and what inspection techniques would be utilized during the audit. The State of Kansas was substituted as a party for KSGID and subsequently moved for summary judgment, asserting that under the Kansas Tort Claims Act it is not responsible for torts of an agent who is acting outside the scope of his employment. The trial court found (1) the chief warehouse examiner's acceptance of a bribe to cover up grain shortages was an act outside the scope of his employment (K.S.A. 75-6103[a]); (2) the State was immune from liability for the retention of the examiner because that was a discretionary function (K.S.A. 75-6104[e]); (3) the State was not liable for negligent supervision of its agent because that was a discretionary function (K.S.A. 75-6104[e]) and there was no evidence the State was negligent in supervising its employee; and (4) the State does not recognize the common-law tort of negligent supervision. After summary judgment was granted to the State, the bank dismissed the examiner from the lawsuit without prejudice. Commerce Bank appeals the district court's grant of summary judgment to the State. We affirm.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P. 2d 983 (1990).

For purposes of determining the State's motion for summary judgment and appeal, it is accepted as true that Reda accepted money from Raymond and his son, Tom Twombly, in exchange for information about the dates of forthcoming grain inspections and advised the Twomblys of the procedures that might be used during the audit so the Company could conceal grain shortages during the inspections.

Commerce bank first argues (1) Reda was acting within the scope of his employment and (2) under the Kansas Tort Claims Act the State is liable as a private person would be under the same circumstances. The bank states the wrongful act of the agent is not the act of accepting the bribe, but the negligent or fraudulent act of arranging the surprise examinations and informing Twombly in advance when the examinations would occur, falsely registering warehouse receipts for company-owned grain, and fraudulently granting the grain company an annual license to operate as a public warehouse. The bank asserts these acts of the State's agents allowed Twombly Grain to manipulate its records, generate fraudulent warehouse receipts, pass inspections to continue in business, and use the false warehouse receipts for non-existent company-owned grain as collateral for loans from Commerce Bank.

Under K.S.A. 75-6103, the State is liable for damages (1) caused by the negligent or wrongful act or omission of any of its employees (2) while the employee was acting within the scope of the employment and (3) under circumstances where the governmental entity, if a private person, would be liable under the laws of this state.

Commerce Bank argues the scope of employment issue is not exclusively determinative of the State's liability. Commerce Bank asserts the phrases "acting within the scope of their employment" and "under circumstances where the governmental entity, if a

private person, would be liable under the laws of this state" are not to be read in conjunction, but are separate tests of governmental liability under the Tort Claims Act. It contends the trial court erroneously found that respondeat superior is the sole test to determine governmental liability. The bank asserts there is governmental liability under K.S.A. 75-6103(a) without regard to scope of employment as long as a private party under the same circumstances would be liable.

The bank points out that the Kansas Tort Claims Act covers "wrongful acts or omissions," *i.e.*, intentional torts. It observes that K.S.A. 1991 Supp. 60-2202(c) provides that there shall be no judgment lien on an employee's property unless (1) the employee's negligent or wrongful act or omission occurred when the employee was acting outside the scope of the employment or (2) the employee's conduct which gave rise to the judgment was because of actual fraud or actual malice of the employee. It claims K.S.A. 1991 Supp. 60-2202 recognizes that a state employee could commit a fraudulent act while acting within the scope of employment.

The trial court determined Reda's acceptance of the bribes was an act outside the scope of his employment; therefore, although Reda may be liable for his act, the State was not. In reaching this conclusion, the trial court relied on *Focke v. United States*, 597 F. Supp. 1325, 1339 (D. Kan. 1982); *Williams v. Community Drive-in Theater, Inc.*, 214 Kan. 359, 366, 520 P.2d 1296 (1974); and PIK Civ. 2d 7.04.

PIK Civ. 2d 7.04 states that an employee is acting within the scope of the employment if the employee is performing services for which the employee has been employed or is doing anything reasonably incidental to the employment. The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it.

In *Williams*, an employee of a corporate drive-in theater shot and injured a theater patron who the employee thought was threatening a fellow employee. The injured plaintiff filed an action against the corporate drive-in theater and the employee. The trial court granted summary judgment to the employer, finding that

the employee was not acting within the scope of her employment. Relying on PIK Civ. 2d 7.04 *et al.*, the *Williams* court reversed the trial court's grant of summary judgment, noting an employee is acting within the scope of his authority when he is performing services for which he has been employed, or when he is doing anything which is reasonably incidental· to his employment.

The *Williams* court stated the liability of an employer for the acts of an employee depends not upon whether the injurious act of the employee was wilful and intentional or was unintentional, but upon whether the employee, when he did the wrong, was acting in the prosecution of the employer's business and within the scope of his authority, or had stepped aside from that business and done an individual wrong. The court recognized the general rule is that an employer is liable for the reckless, wilful, intentional, wanton, or malicious acts of an employee as well as for heedless and careless acts if they are committed while the employee is acting in the execution ·of his authority and within the course of his employment, or with a view to the furtherance of his employer's business, and not for a purpose personal to the employee. The court concluded, in determining whether an assault by an employee is of a personal nature and therefore unforeseeable, that the question whether the employment is of such a nature that the use of force may be contemplated to protect the interests of the employer may become a pertinent factor. *Williams*, 214 Kan. at 366.

In *Focke v. United States*, 597 F. Supp. 1325, a negligent hiring and wrongful death action was brought against the United States, arising out of a Veteran's Administration Hospital social worker associate's involvement in sexual activity with the wife and the adopted daughter of a patient of the V.A. Hospital and the patient's subsequent suicide. The United States District Court noted that the social work associate's duties were extremely limited, consisting essentially of menial and task-oriented jobs rather than therapy or counseling. The court determined the worker was acting outside the scope of his expressed, implied, and apparent authority when he engaged in sexual activity with both the wife and the adopted daughter of the patient. The court observed that the activity which caused the injury was purely for the employee's own sexual gratification. The court determined

that under Kansas law, for an employer to be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit, such negligence must be established as the proximate cause of the damage to the third person and that the third person must have been injured by some negligent or other wrongful act of the employee so hired. The court then examined Kansas law to consider whether the employee's acts were outside the scope of his employment. The court followed the test formulated by this court in *Williams* to determine whether the employee, when he committed the wrongs, was acting in the prosecution of the employer's business and within the scope of his authority or if the employee had stepped aside from that business and had done an individual wrong. The court found that the employee was engaged in malicious and wanton acts for his own gratification for which the government could not be held liable.

Here, the district court determined (1) the taking of bribes by grain inspectors does not further the purpose of the KSGID, but is only of personal benefit to the bribed inspector; (2) the State had neither expressed nor implied that its agent could accept bribes from the Twomblys; (3) the supervisor of Reda had no reason to foresee Reda would act in this manner; so (4) Reda's acts were not within the scope of his employment.

The State asserts this appeal involves only the principle of imputed negligence and whether the State is vicariously liable for the alleged acts of its employee. The State argues it is not liable under the Kansas Tort Claims Act for acts of employees committed outside the scope of their employment. It claims that two thresholds must be met for the State to be liable under the Tort Claims Act for an employee's acts. First, the employee must have been acting within the scope of the employment; and second, the circumstances must have been such that the State, if a private person, would be liable under the laws of Kansas. The State contends if both tests are not met, there is no governmental liability to injured third parties.

The State asserts the criterion for determining whether an employee acted within the scope of employment is whether the employee was furthering the employer's interest in some way. The State cites *Focke* for the proposition that the consideration

for the trier of fact in determining whether an employee is acting within the scope of employment is the purpose of the employee's act rather than the method of performance. The State argues that if the wrongful act is done for a purpose personal to the employee and not in furtherance of the employer's business the government employer is not liable. The State claims Reda was acting for himself when he accepted the bribe and not in furtherance of his employer's business. Therefore, Reda was not acting within the scope of his employment.

The State maintains that the only case analogous to this case is *Melton v. United States*, 488 F. Supp. 1066 (D.D.C. 1980). In *Melton*, plaintiff owned rental property and accepted government loans to pay for corrections of housing code violations. Greenleaf, the government employee who selected and supervised the project's contractor, had accepted bribes from the contractor. After the contractor selected by the government agent failed to correct the defects, the property owner sued the contractor, Greenleaf, and his employer. The United States District Court reviewed the Federal Tort Claims Act and stated it was clear that an act of a government employee may be within the scope of employment even though it is a criminal or tortious act. The court stated, on the other hand, if the employee committing the criminal act is acting solely for his own benefit, his employer is not liable.

After reviewing the record, the court observed that Greenleaf's criminal activity was not within the scope of his employment. The court concluded that under no persuasive theory could his involvement in a bribery scheme be regarded as furthering his employer's interests. Accordingly, the government did not bear any direct responsibility for its agent's criminal actions regarding plaintiff and her project. *Melton*, 488 F. Supp. at 1073-74.

Here, the State argues Reda's actions to earn the bribe did not further KSGID's duty to protect producers who stored their grain with Twombly Grain. The State asserts Reda's alleged wrongful act was one of personal greed rather than fulfillment of any KSGID business.

The general rule is that a state (sovereign) cannot be sued without its consent. No suit, whether at law or in equity, can

be maintained against the state unless the state has given its consent or waived its immunity. The purpose of the immunity is to protect the state from interference with the performance of its governmental functions.

When the concept of governmental immunity was first conceived in this state, the State and its agencies devoted their time and energy to the function of governing. As the needs and wants of the citizens increased, our state government began to engage in endeavors that were not governmental but proprietary functions. The judiciary began the erosion of governmental immunity and denied tort immunity to municipal governments performing "proprietary" or "permissive" functions.

In *Carroll v. Kittle*, 203 Kan. 841, 457 P.2d 21 (1969), the court recognized that the doctrine of governmental immunity had judicial origin. The legislature, having adopted no general rules, had left the matter to the courts to determine the policy. Courts had provided general rules for determining whether the governmental body had embarked on an enterprise which was commercial in character or which was usually carried on by private individuals or private companies, thereby losing its immunity. Because the legislature was in a better position than the court to restrict the application of governmental immunity, the court abolished the judicially created doctrine of governmental immunity.

In 1970, the legislature responded to the *Carroll* decision by enacting K.S.A. 46-901 *et seq.* (Weeks). These statutes declared the State and its departments, agencies, institutions, etc., to be immune from liability and suit on an implied contract, or for negligence or any other tort, unless otherwise specifically provided by law. K.S.A. 46-902 (Weeks) specified that the liabilities of local units of government were to be unaffected by this legislative declaration of governmental immunity.

In 1979, the legislature repealed K.S.A. 46-901 *et seq.* (Weeks) and enacted the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.* For negligent or tortious conduct, liability became the rule, immunity the exception. The burden was placed upon the governmental entity or employee to establish entitlement to any of the exceptions set forth in K.S.A. 75-6104.

Under the Act, to determine if an employee is acting within the scope of employment the court considers (1) whether the act by the employee was done for the employee's personal benefit or in furtherance of the state's business; (2) whether there was express or implied authority to perform the act in question; and (3) whether the employee's act was reasonably foreseeable by the State. The liability of the State for an act of an employee depends not upon whether the injurious act of the employee was wilful and intentional or was unintentional, but upon whether the employee, when the employee did the wrong, was acting in the prosecution of the State's business and within the scope of the employee's authority, or had stepped aside from that business and done an individual wrong.

Under K.S.A. 75-6103, the State is liable for damages caused by the negligent or wrongful act or omission of any of its employees while the employee was acting within the scope of the employment and under circumstances where the governmental entity, if a private person, would be liable under the laws of this state. The language of K.S.A. 75-6103 is plain and unambiguous, and this court's responsibility is to give effect to the intent of the legislature as expressed, not to rearrange the legislature's work to express what the court thinks the law should or should not be. *Barber v. Williams*, 244 Kan. 318, 324, 767 P.2d 1284 (1989).

Commerce Bank claims Reda's motivation is a factual issue and not an uncontroverted resolved fact. The bank argues his motivation may have been to aid Twombly Grain until it could correct the shortfall or perhaps spare KSGID from the embarrassment and adverse publicity of a major grain elevator failure. Therefore, it argues there is a question of fact for the jury to determine and the granting of summary judgment was erroneous.

We agree the question of scope of employment is ordinarily a jury question, but accepting a bribe cannot be considered within the scope of a state employee's employment. Plaintiff requests this court to examine only the issue of whether liability should be imposed on a private person in like circumstances. In order to separate the bribery scheme and its various consequences, the plaintiff would require this court to write the "scope of employment" test out of the Tort Claims Act. This we are unable to

do. The trial court did not err in holding Reda was acting outside the scope of his employment in accepting money from Twombly Grain and providing information on upcoming inspections. The State is not liable under the Kansas Tort Claims Act. Under these circumstances, summary judgment in favor of the State was proper.

Affirmed.