**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 13 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEROME GIRARD,

      Plaintiff-Appellant,

v.

TRADE PROFESSIONALS, INC.,

      Defendant-Appellee.

No. 00-3216
(D.C. No. 98-CV-2122-GTV)
(D. Kansas)

---

**ORDER AND JUDGMENT** *

---

Before **HOLLOWAY** , **BRORBY** , and **JONES** ,** Circuit Judges.

Plaintiff-Appellant Jerome Girard ("Girard") filed suit against Defendant-Appellee Trade Professionals, Inc. based on injuries Girard sustained in a car accident involving a Trade Professionals employee who had finished work for the day and was driving "home."[1] The district court granted summary judgment on

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

** The Honorable Nathaniel R. Jones, United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1]According to appellant, the employee was staying at a hotel, and according to appellee he rented a studio apartment. The distinction is immaterial. In this

(continued...)

Girard's *respondeat superior* and negligent hire claims. For the reasons stated below, we affirm.

## I.

On May 22, 1997, Roger Anders ("Anders") was driving home from work when his vehicle and a vehicle driven by Girard collided. Girard sustained severe injuries. At the time of the accident, Anders was employed by Defendant-Appellee Trade Professionals, Inc., an employment agency based in Davenport, Iowa that provides skilled tradesmen to construction contractors in six states.

Anders, a journeyman electrician, contacted Trade Professionals in early 1997 about employment, and Trade Professionals sent him an application. During his interview and on the application, Trade Professionals asked if Anders had his own transportation and could get to job sites, but Trade Professionals did not ask Anders about his driving record. Anders' driving record contained multiple violations. Anders testified that Trade Professionals did not require employees to own a car.

In April or May of 1997, DeVries Electric Company contacted Trade Professionals in order to find an electrician to work on a school construction

[1](...continued)
opinion, "home" refers to the employee's lodging in Kansas.

-2-

project in Kansas, and Trade Professionals in turn contacted Anders to fill the position. Anders went to Kansas and rented lodging.

Because he was working out of town, Trade Professionals provided him with what they called a "per diem," which amounted to three dollars per hour above his standard wage.[2] Trade Professionals' customer, the contractor, decides what the per diem will be. Testimony indicated that the payment of a per diem is common in this industry and that the money is understood to be paid in order to compensate for the costs of meals, lodging, etc., which are incurred by employees who are working out of town. Anders had the same understanding of the purpose of the per diem. Trade Professionals did not directly pay for any of Anders' travel-related expenses. Representatives of DeVries and Trade Professionals testified that Anders' job duties were that of an electrician, and DeVries said that Anders' duties did not include driving.

While he was in Kansas, Anders generally drove his own truck to work or got a ride with a co-worker. On the day of the accident, Anders left work after his shift was over, stopped for gasoline, and proceeded to drive towards his Kansas lodging. One of his co-workers rode with him. En route, Anders collided with Girard's vehicle.

---

[2]The district court pointed out that the use of the term "per diem" is not technically correct here because this was really an increase in Anders' hourly wage, but in order to be consistent with the record it is helpful to use the term.

**II.**

This Court reviews the district court's grant of summary judgment *de novo*. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1159 (10th Cir. 1999). The Court applies the same legal standard as the district court pursuant to Federal Rule of Civil Procedure 56(c); thus, the district court's order should only be affirmed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). In deciding a summary judgment motion, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, "[w]here the nonmoving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation omitted).

Federal jurisdiction in this case is based on diversity of the parties pursuant to 28 U.S.C. § 1332 (2000).

**III.**

The Kansas Supreme Court has held that:

An employer is liable for the tortious acts of his employee only under special circumstances. Special circumstances exist when the employee is [1] on the employer's premises, [2] performing work for the employer, or [3] using the employer's chattel, [4] when the employer voluntarily assumes a duty to control the employee, or [5] when the employer negligently retains a known incompetent or unfit employee.

*Thies v. Cooper*, 753 P.2d 1281, 1285 (Kan. 1988) (holding that "[a]bsent special circumstances, an employer owes no duty to a third party for tortious acts of an employee who, after consuming alcohol on the employer's premises, leaves the employer's premises and, while off duty [and driving home from the workplace], injures a third party").   As the district court pointed out, Girard seeks to impose liability on Trade Professionals under the second and fifth of these circumstances.

**A. Respondeat Superior**

A principal is only liable for the torts of his agent if at the time the tort was committed the agent was acting within the scope of his authority or employment. *See Brinkley v. Farmers Elevator Mut. Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir. 1973); *Plains Resources, Inc. v. John R. Gable and Empire Oil & Gas Co.*, 682 P.2d 653, 662 (Kan. 1984).   In *United States v. Hainline*, the Tenth Circuit explained,

> Under Kansas law the liability of an employer for the negligent acts of his employee is controlled by a determination as to whether, at the time of the act complained of, the employee was engaged in the *furtherance of the employer's business to such a degree that the employer had the right to direct and control the employee's activities*. Liability does not attach to the employer if there is only incidental furtherance of the employer's business.

315 F.2d 153, 155 (10th Cir. 1963) (emphasis added) (quoted in *Brinkley*, 485 F.2d at 1287).  Thus, the primary factor to be considered is whether the principal had control over the agent.  "If the principal had no right to direct and control the agent at the time in question, the principal is not vicariously liable to third parties for the agent's negligence."  *Huenik v. Rice Motors*, 859 F. Supp. 1398, 1405 (D. Kan. 1994) (citing *Brinkley*, 485 F.2d at 1286).

Accordingly, in *Kyle v. Postal Telegraph-Cable Co.,* the Supreme Court of Kansas held that "an employer is not liable for injuries caused by an employee whose 'actual work for the company had ceased for the day.'" *Alderton v. Evans Electrical Constr. Co.*, No. 57,926, 1986 Kan. App. LEXIS 945, at *3 (Ct. App. Kan. Mar. 6, 1986) (quoting, *Kyle*, 235 P. 116, 117 (Kan. 1925)).  *Kyle* involved a messenger who was riding his own bicycle home after work when he ran into the plaintiff.  235 P. at 116-17.  At the time of the accident, the messenger was carrying reports to be delivered on the next work day.  *Id.* at 117.  The court held that the messenger was not "acting in the conduct of his master's business" or, in other words, "within the scope of his employment" because:

actual work for the company had ceased for the day. He was free to go where he desired. He could use his own mode and route of travel. The defendant no longer controlled his movements. He might choose any route he desired to go home, or he might not go home at all.

*Id.*

*Kyle* is similar to the case at bar and its reasoning is instructive. Here, Anders' shift was over. He was under no instruction to go to his home and he had no duty to perform on the way. He was free to go wherever he pleased, by whatever form of transportation he desired, and to do whatever he wanted. Thus, he was no longer under the control of his employer, and he was not furthering Trade Professionals' business. Therefore, Trade Professionals cannot be liable for the accident, and the district court properly granted summary judgment for Trade Professionals.[3]

---

[3]Similar to the idea expressed in *Kyle*, numerous courts have held that employers are not generally liable for the acts of their employees on the employees' way to and from work, and the rule has come to be known in various jurisdictions as the "going and coming rule." *See* Christopher Vaeth, Annotation, *Employer's Liability for Negligence of Employee in Driving His or Her Own Automobile*, 27 A.L.R.5th 174 (2000); *Orgeron v. McDonald*, 639 So. 2d 224, 227 (La. 1994) ("Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route.") Plaintiff presents several arguments and cites numerous cases from a variety of jurisdictions in an attempt to persuade us that the going and coming rule would not apply in this case. After careful consideration, we find that the cases cited are distinguishable either because they are workers' compensation cases or because they have key factual dissimilarities to the case at bar, and we hold that the

(continued...)

**B. Negligent Hiring**

Under Kansas Law, "[a] master may be liable for injuries to a third person which are the direct result of the incompetence or unfitness of his servant where the master was negligent in employing the servant or in retaining him in employment when the master knew or should have known of such incompetence or unfitness of the servant." *Plains Resources, Inc. v. John R. Gable and Empire Oil and Gas Co.,* 682 P.2d 653, 662 (Kan. 1984) (quoting *Balin v. Lysle Rishel Post No. 68*, 280 P.2d 623 (Kan. 1955).[4] In *Schmidt v. HTG, Inc.*, the Kansas Supreme Court recently explained this cause of action as follows.

> In order to find an employer liable for negligently hiring or retaining an employee, there must be some causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person; the employer must, by virtue of knowledge of the employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of continued employment of that employee; and the harm which results must be within the risk created by the known propensity.

[3](...continued)
circumstances present in this case do not warrant an exception from the going and coming rule. In short, none of plaintiff's arguments persuades us that there is a genuine issue of material fact as to whether during Anders' commute from work he was furthering Trade Professionals' business to such a degree that his employer had control over his activities.

[4]An employer's direct liability for negligent hiring is independent from the vicarious liability of an employer under the doctrine of *respondeat superior*. *See Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1500, n. 8, 9 (10th Cir. 1994); *Marquis v. State Farm Fire & Casualty Co.*, 961 P.2d 1213, 1225 (Kan. 1998).

961 P.2d 677, 680, Syl. para. 10 (Kan. 1998).

In *Schmidt*, the court surveyed Kansas cases involving claims of negligent hire and found that "liability normally only attaches to acts occurring at the employer's business location or committed during the conduct of the employer's business." *Id.* at 680, Syl. para. 9. The court determined that:

> In each of the Kansas cases upon which liability of the employer was predicated, the existence of a duty to the injured party was based on actions against a customer or co-worker which took place on the working premises during the time employment services were normally rendered. In none of such cases was the employee not acting in the course of employment, nor was the injurious action removed from the employer's premises *or without any nexus to the employer's operations.*

*Id.* at 695 (emphasis added); *see also Goforth v. Office Max*, No. L97-2972, 1999 Va. Cir. LEXIS 120 (Va. Cir. Ct. Apr. 16, 1999) (citing *Schmidt* and collecting cases supporting the idea that there should be a connection between the fact of employment and the plaintiff's injury in order to invoke liability for negligent hiring). Therefore, the court said that none of the cases,

> should be unduly extended to find that a duty comes into existence whereby an employer must ascertain the detailed history of every employee, whether criminal or not, and terminate the employment of an individual who is performing acceptable services and is clearly not unfit or incompetent, but who does pose some degree of risk due to previous actions.

*Id.* Accordingly, the *Schmidt* court held that an employer restaurant was not liable for negligently hiring a male employee who took a female former employee home from a social gathering at a bar and killed her.

Although the facts of *Schmidt* are quite different from those in the case at bar, the underlying rationale is clearly applicable. The court in *Schmidt* decided that the case law did not "provide a sufficient basis for us to impose upon an employer the obligation to be legally liable and responsible for the illegal acts of employees which occur at social settings away from the place of employment . . . ." *Id.* In the case at bar, Anders did not get as far as a social gathering; however, like the situation in *Schmidt*, Anders was on his own time. He was merely using his own truck to transport himself home. The actions at issue took place away from the place of business, and he was not carrying out his employer's business. Thus, there was no "nexus to the employer's operations." *Id.* Based on the Kansas Supreme Court's refusal to impose liability for negligent hire where the employee is acting without a nexus to the employer's business, we affirm the district court's grant of summary judgment on this issue.

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment.

Entered for the Court


Nathaniel R. Jones
Circuit Judge