No. 120,866

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES LONG,
*Appellant*,

v.

MICHAEL HOUSER and STATE OF KANSAS,
*Appellees*.

SYLLABUS BY THE COURT

1.

The going and coming rule instructs that when an employee is driving to or from work, he or she is subjected only to the same risks or hazards that the public faces while driving. The risks therefore are not causally related to the employment.

2.

The going and coming rule is applicable to third-party tort liability claims as part of the calculus of whether an employee is acting within the scope of his or her employment.

3.

State legislators are generally not acting within the scope of their employment when they drive home from Topeka at the end of the legislative session, even though the state reimburses them for their travel.

Appeal from Cherokee District Court; FRED W. JOHNSON JR., judge. Opinion filed January 10, 2020. Affirmed.

*David C. Byerley*, of Law Offices of McKay & Byerley, of Kansas City, Missouri, and *Shelly C. Dreyer*, of Sticklen & Dreyer, P.C., of Joplin, Missouri, for appellant.

*Brant M. Laue*, deputy solicitor general, *Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee State of Kansas.

Before ARNOLD-BURGER, C.J., LEBEN and SCHROEDER, JJ.

ARNOLD-BURGER, C.J.:  A governmental entity is "liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 2018 Supp. 75-6103(a). One of the most important factors used to determine whether an employer is liable for the negligence of his or her employee while the employee is traveling is "whether the employee, while traveling to or from the workplace, was under the control of the employer." *Mulroy v. Olberding*, 29 Kan. App. 2d 757, 767, 30 P.3d 1050 (2001).

State Representative Michael Houser was returning home the day after the legislative session closed for a break. On his drive home he struck James Long's vehicle and injured Long. The state reimbursed Houser for his travel on the day of the accident.

Long sued Houser and the State. Long argued the State was vicariously liable for Houser's negligence because Houser was within the scope of his employment at the time of the collision. The district court ruled against Long, finding that Houser was not within the scope of his employment. Long appeals.

2

FACTUAL AND PROCEDURAL BACKGROUND

In February 2017, Houser was a state representative for the State of Kansas. Houser lived in Columbus, Kansas. As a state representative, Houser was required to be present in Topeka during legislative sessions.

Kansas provides its state representatives a salary and a per diem. The per diem can be used for lodging and meals. The State also provides representatives funds to pay for their travel to and from Topeka. Representatives often spend the night in Topeka after a day's session—due to weather or time of day—and return to their homes the next day. Similarly, representatives often spend the night in Topeka before the session starts. The nights before a session and after a session are covered by the per diem allowance provided legislators.

On February 23, 2017, the Legislature recessed, and Houser chose to spend the night in Topeka and return to Columbus the following morning. On the morning of the 24th, after eating breakfast, Houser returned home in his personal vehicle. He took his usual route and only stopped to use the restroom and get refreshments. According to Houser, he would have done the same thing if he had returned on the night of the 23rd.

On his way home, Houser crossed the center line and struck Long's vehicle. Long was injured in the collision.

Houser was later reimbursed for his travel on February 24, 2017—the day of the crash.

Long sued Houser and the State. The State filed a motion for summary judgment, arguing that the State could not be liable for Houser's accident because Houser was not acting within the scope of his employment while he was traveling from Topeka to his

3

home in Columbus. The district court granted the State's motion for summary judgment, finding that Houser was not within the scope of his employment during his drive home.

Long appeals.

ANALYSIS

Generally, a state sovereign cannot be sued without its consent. *Commerce Bank of St. Joseph v. State*, 251 Kan. 207, 213-14, 833 P.2d 996 (1992) (state immune unless it has consented to be sued or waived its immunity). Kansas has done so by statute, with a few statutorily enumerated exceptions. Under K.S.A. 2018 Supp. 75-6103(a), the State "shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

The district court found Houser was not acting within the scope of his employment. Long disagrees. So he has sought appellate review of the district court's finding. When, as here, there is no factual dispute, we review the order granting summary judgment de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

The question on appeal is whether Houser was acting within the scope of his employment when he drove to his home in Columbus the day after the legislative session ended.

*Vicarious liability*

Long is seeking damages from the State under the theory of vicarious liability. "Vicarious liability is a term generally applied to legal liability which arises solely

4

because of a relationship and not because of any actual act of negligence by the person held vicariously liable for the act of another." *Leiker v. Gafford*, 245 Kan. 325, 355, 778 P.2d 823 (1989). Vicarious liability is also called imputed negligence or respondeat superior. *Nash v. Blatchford*, 56 Kan. App. 2d 592, 608, 435 P.3d 562, *rev. denied* 310 Kan. ___ (September 9, 2019).

Our Supreme Court has noted that the justification for vicarious liability is that the losses caused by an employee's tortious or bad acts are placed on the enterprise or the employer engaged in that enterprise as a cost of doing business. *Bright v. Cargill, Inc.*, 251 Kan. 387, 407, 837 P.2d 348 (1992). If the employer is engaged in an enterprise, that may ultimately harm others, it is the employer who is best able to bear the financial burden of liability and pass on the costs of it. *Bair v. Peck*, 248 Kan. 824, 830, 811 P.2d 1176 (1991). In other words, it is a deliberate allocation of risk.

> "It is elemental that every person conduct his [or her] business so as not to cause injury to others, and if he [or she] conducts business through others, he [or she] is bound to manage them so third persons are not injured by the others while they are doing the principal's business within the scope of their authority. The doctrine is a 'fiction of the law,' not favored in this state, which is limited to master/servant (employer/employee) and joint enterprise relationships. These are relationships in which the potential respondents have sufficient control and responsibility for the actions of others to justify holding them liable for their actions. [Citations omitted.]" *Brillhart v. Scheier*, 243 Kan. 591, 593, 758 P.2d 219 (1988).

As a result, to apply this fiction of the law, we must make sure that the employer is exercising sufficient control over the employee to justify holding the employer liable. In other words, was the employee acting within the scope of his or her employment? See K.S.A. 2018 Supp. 75-6103(a).

*Determining whether an employee is acting within the scope of his or her employment*

Generally, whether an employee is acting within the scope of his or her employment is a question of fact. But if the facts of the case lead only to one reasonable conclusion, the court can decide the issue as a matter of law. *Wayman v. Accor North America, Inc.*, 45 Kan. App. 2d 526, Syl. ¶ 3, 251 P.3d 640 (2011). Such is the case here.

Our Supreme Court has explained that to determine whether a state employee is acting within the scope of his or her employment courts consider "(1) whether the act by the employee was done for the employee's personal benefit or in furtherance of the state's business; (2) whether there was express or implied authority to perform the act in question; and (3) whether the employee's act was reasonably foreseeable by the State." *Commerce Bank of St. Joseph*, 251 Kan. at 215. "The liability of the State . . . depends . . . upon whether the employee, when the employee did the wrong, was acting in the prosecution of the State's business and within the scope of the employee's authority, or had stepped aside from that business and done an individual wrong." 251 Kan. at 215. The statute also limits the State's liability to "circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 2018 Supp. 75-6103(a). This makes sense. To hold otherwise could subject the sovereign to liability in more circumstances than a private individual—greatly enhancing its liability. This provision ensures that the State can raise all the same defenses as a private person could, no more and no less.

A common area of debate when it comes to whether someone was acting within the scope of his or her employment when a motor vehicle collision is concerned, is whether the employee is acting in furtherance of the employer's business when the collision occurs. We have only one Kansas Supreme Court case that addresses such a situation, one factually very similar to this case—albeit with a collision between a bicyclist and a pedestrian.

6

A messenger boy for Postal Telegraph was riding his bicycle home from work when he ran into a pedestrian, causing injury. *Kyle v. Postal Telegraph-Cable Co.*, 118 Kan. 300, 235 P. 116 (1925). Like this case, *Kyle* turned on whether the messenger boy was within the scope of his employment at the time of the collision. The court held that the boy was not within the scope of his employment because his "actual work for the company had ceased for the day." 118 Kan. at 302. The boy "was free to go where he desired" and "could use his own mode and route of travel." 118 Kan. at 302. As the court noted, the employer "no longer controlled his movements." 118 Kan. at 302. While the boy had company reports in his possession, the employer did not exert any control over what he did on his way home. The court reasoned that "carrying . . . the report was merely incidental to his going home." 118 Kan. at 302. Because the boy was not within the scope of his employment after he left work, the company was not liable for the collision. 118 Kan. at 302. This finding is not inconsistent with the Supreme Court's three-part test in *Commerce Bank of St. Joseph.* The boy was not acting in furtherance of the telegraph company's business when he was riding home.

Although *Kyle* is the only Kansas Supreme Court case that addresses vicarious liability of an employer when an employee is traveling home from work, this court addressed it in *Mulroy*, 29 Kan. App. 2d at 767, as it relates to an employee traveling to work. Dennis Mulroy sued Duane Olberding and Western Resources, his employer, for damages related to his injuries sustained in a collision with Olberding.

Our court found that the issue was not whether the employee had reached the work location; instead it is "whether the employee, while traveling to or from the workplace, was under the control of the employer." 29 Kan. App. 2d at 767. The court found that Olberding was acting within the scope of his employment so Western Resources could be found vicariously liable. 29 Kan. App. 2d at 768-69. It reasoned that Western Resources controlled Olberding at the time of the accident. The company had sent him to a different location that day than his normal work location, and he was on company time when the

collision occurred. Western Resources exercised control over Olberding by firing him for operating a vehicle while under the influence of alcohol during working hours and for his failure to report the crash to the company. 29 Kan. App. 2d at 768.

*Mulroy* also dovetails with *Commerce Bank of St. Joseph* and *Kyle*. The focus must be on whether the employee was acting in furtherance of the employer's business. A key factor is the amount of control exercised over the employee by the employer. It is simply another way of asking whether the employee was acting within the scope of his or her employment when the bad act took place.

The State asks us to apply what is known as the "going and coming" rule to the vicarious liability equation. The going and coming rule precludes an employee from recovering from a workers compensation claim when the employee is merely going to or coming from work. The rule has a statutory basis, beginning at least as early as 1913, in the Kansas Workers Compensation Act, K.S.A. 44-501 et seq. See *Sedlock v. Mining Co.*, 98 Kan. 680, 681, 159 P. 9 (1916).

In general, the Act requires that the employer pay for any injuries suffered by an employee that arise out of and in the course of his or her employment. K.S.A. 2018 Supp. 44-501b(b). But certain injuries are excluded from coverage. The language of the statute regarding the definition of "arising out of and in the course of employment" has remained unchanged since 1913.

> "The words, 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to the employee occurring while the employee is on the way to assume the duties of employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence." K.S.A. 2018 Supp. 44-508(f)(3)(B).

8

Even before the Act's codification in 1913, the presumption that someone going to or returning from work was not acting within the course of his or her employment was a judicially created rule "universally developed" by courts in workers compensation cases. *Chapman v. Victory Sand & Stone Co.*, 197 Kan. 377, Syl. ¶ 1, 416 P.2d 754 (1966). The rationale behind the going and coming rule is that when someone is driving to work, he or she is subjected only to the same risks or hazards that the public faces while driving. The risks therefore are not causally related to the employment. *Craig v. Val Energy, Inc.*, 47 Kan. App. 2d 164, 166, 274 P.3d 650 (2012).

But the workers compensation cases recognize that there could be situations when travel was an essential part of employment so that it furthers the purposes of the employer. In those cases, injuries would be covered by workers compensation. See *Craig*, 47 Kan. App. 2d at 168. When travel becomes an intrinsic part of the job it is an element of employment. *Sumner v. Meier's Ready Mix, Inc.*, 282 Kan. 283, 289, 144 P.3d 668 (2006). As we pointed out in *Craig*, "the analysis is really whether travel has become a required part of the job such that the employee actually assumes the duties of employment from the moment he or she leaves the house and continues to fulfill the duties of employment until he or she arrives home at the end of the workday." 47 Kan. App. 2d at 168.

We do not see any difference in the analysis between the going and coming rule in the workers compensation context and the analysis for vicarious liability under *Commerce Bank of St. Joseph*, *Kyle*, and *Mulroy* which focused on whether the employer exercised control over the employee during the trip to and from work. Typically, an employee would not be furthering the business of the employer when going to and coming from work.

This court came to the same conclusion, even if in dicta, in *Ullery v. Othick*, No. 112,469, 2017 WL 3837218, at *5 (Kan. App. 2017) (unpublished opinion). In *Ullery*,

9

the district court was tasked with determining whether a health aide was employed by a particular business. If she was, the business might have been vicariously liable for the health aide's negligence for causing a collision that killed her patient on the way home from a training session. Although the court found that the health aide was not an employee of the business, it opined that even if she were the result would not change.

> "As a general rule, an employer is not liable under Kansas law for an employee's negligence while the employee is traveling to or from the job. That's known as the ['going and coming'] rule—and it makes sense because the employee isn't acting within the scope of employment while coming to or going away from the jobsite." 2017 WL 3837218, at *5.

The district court and our court reasoned that the business had no right to control the aide's actions in going to or coming from the training session. Our court focused on the fact that the aide was free to go wherever she wanted after the meeting and that she even stopped for fast food on the way home. 2017 WL 3837218, at *5. This was a clear application of the going and coming rule to a vicarious liability tort claim.

And finally, 20 years ago, Federal District Judge G. Thomas VanBebber came to the same conclusion. In *Girard v. Trade Professionals, Inc.*, 50 F. Supp. 2d 1050, 1053 (D. Kan. 1999), *aff'd* 13 Fed. Appx. 865 (10th Cir. 2001) (unpublished opinion), he noted that *Kyle* was still good law and although "the Kansas Supreme Court has not expressly used the phrase 'going and coming rule' in the context of vicarious tort liability," it would do so—as have most other state supreme courts.

For these reasons, we have no hesitation finding that even though the Kansas Supreme Court has not used the magic words "going and coming rule" in the tort context, it has applied and will continue to apply the going and coming rule to third-party tort liability claims as a means to determine whether an employee is acting within the scope of his or her employment. See *Kyle*, 118 Kan. at 301-02.

10

So next, we must apply the rule to the facts here to see if Houser was acting within the scope of his employment—in furtherance of the business of the state—when he left Topeka to return home.

*Houser was not acting within the scope of his employment as he returned home from Topeka.*

Houser was returning home from work at the time of the crash. The going and coming rule, on its face, applies to the situation. But as this court explained in *Craig*, the real question is whether the travel was so integral to the employment that the travel was an assumption of the duties of employment. See 47 Kan. App. 2d at 167-68.

From the facts provided here, Houser cannot be said to have been within the scope of his employment while he traveled home. The most important question is how much control the employer had over the employee while the employee was traveling. See *Kyle*, 118 Kan. at 302 (noting employer "no longer controlled" the employee's movements); *Mulroy*, 29 Kan. App. 2d at 767 ("[T]he test for whether respondeat superior applies in travel situations is whether the employee, while traveling to or from the workplace, was under the control of the employer.").

Here, the State exerted minimal control over Houser during his travels. Long is correct that Houser had to live in his district and be present in Topeka to work, but those requirements do not control how Houser travels between the two locations. See Kan. Const. art. 2, § 4. Houser had the choice of leaving the same day the session ended, or he could have stayed all weekend. He had complete discretion on when he would leave Topeka.

This was not a situation like the one this court confronted in *Craig*, where the employee had to pick up fellow workers and arrive at a specified location at a specified

time. See 47 Kan. App. 2d at 170. We held that Craig, who was on his way to work, was within the scope of his employment at the time of his collision because he was reimbursed for his mileage to and from work, received a per diem reimbursement for going to work, was given a bonus for each crew member that arrived with him to work, and would not have been hired if he could not drive and transport his crew. 47 Kan. App. 2d at 170. Craig had no permanent worksite, and the employer was receiving a benefit from the transportation arrangement. This court held that because Craig's time traveling was an essential part of his employment, he was entitled to workers compensation coverage. 47 Kan. App. 2d at 171.

Unlike *Craig*, the State had a more generalized requirement for Houser—he had to live in his home district and be in Topeka for work. How and when he met those requirements was up to him. The fact that Kansas reimburses Houser's mileage weighs in favor of Long's argument that Houser was within the scope of his employment when he was traveling. But the overall reimbursement scheme cuts against any exertion of control. The State has fixed-mileage rates, and it only reimbursed Houser for one trip to Topeka and one trip back to his home at the fixed rate. See K.S.A. 2018 Supp. 75-3203(a)-(b). There is no indication that the State sought to control what route Houser used to return home. In fact, there was no incentive for the State to do so because Houser would be reimbursed the same amount no matter what route he took. See K.S.A. 2018 Supp. 75-3203(b). But see K.S.A. 2018 Supp. 75-3203(e) (allowing additional reimbursement for parking, turnpike, and bridge tolls).

If the employer is not exerting some form of control over the travel, it cannot be said that the employer is benefiting from the travel more than the standard benefit an employer receives by having employees commute to work. See *Craig*, 47 Kan. App. 2d at 167-68. By the time Houser was returning home, his actual work for the State was complete. See *Kyle*, 118 Kan. at 302. The fact that state representatives must work in Topeka and live in the district that elected them does not place them in a situation unlike

12

what many employees in all walks of life face. He was doing no more than countless other employees do every day—returning home. Representatives may travel between work and home using their "own mode and route of travel." See 118 Kan. at 302. The fact that some representatives' commutes may be longer than the ordinary employee is immaterial to the fact that each representative is merely traveling to work or home.

Finally, Long claims that a state representative's immunity from arrest while traveling to or from Topeka weighs in favor of a finding that the State controls the representative's travel. We disagree. Long is correct that a representative enjoys certain immunities while traveling to or from the legislative session. While the immunity places a traveling state representative in a different position than most employees heading to or from work, it does not change the fact that representatives may travel in the manner of their choosing without direction from the State, so long as they arrive at work on time.

The district court did not err in granting the State's motion for summary judgment. The State is only liable for the negligence of an employee "where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 2018 Supp. 75-6103(a). The State's liability depends, in part, on whether the employee was acting in the furtherance of the State's business and within the scope of his or her authority. *Commerce Bank of St. Joseph*, 251 Kan. at 215. But the State will only be liable if a private person in the same situation would be liable. K.S.A. 2018 Supp. 75-6103(a). Because a private employer would not be liable for the employee's negligence in this situation—going to and coming from work—neither is the State liable for Houser's negligence. See K.S.A. 2018 Supp. 75-6103(a).

Based on the undisputed facts, Houser was not within the scope of his employment as he returned home from work. Summary judgment therefore was proper.

Affirmed.

13