Eva P. ORTIZ–ROSARIO, etc., Plaintiffs,

v.

**TOYS "R" US PUERTO RICO, INC., etc., Defendants.**

**Civil No. 05–2098 (DRD).**

United States District Court, D. Puerto Rico.

Oct. 4, 2007.

Order Denying Reconsideration Oct. 14, 2008.

Jorge L.M. Cintron–Pabon, Arlene D. Villali–Gonzalez, Villali Law Office, San Juan, PR, for Plaintiffs.

Ivan M. Fernandez, Ivan M. Fernandez Law Office, San Juan, PR, for Defendants.

### AMENDED OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before this court is Defendant Toys "R" Us ("Defendant") *Motion to Dismiss*, (Docket No. 23), for failure to state a claim in the complaint filed by Plaintiffs Eva P. Ortiz–Rosario ("Mrs. Ortiz") and her daughter Mildred Garcia–Ortiz ("Mrs. Garcia"), for the violation of 42 U.S.C. §§ 1981, 1982, 1985; Articles 1802 and 1803 of the Civil Code of the Commonwealth of Puerto Rico, 31 L.P.R.A. §§ 5141, 5142, and 1 L.P.R.A. § 13. Plaintiff filed an objection, (Docket No. 29). For the reasons set forth below, the motion to dismiss is granted.

### Factual Background

On October 14, 2005, Mrs. Ortiz filed the instant complaint under 42 U.S.C. § 1981 ("Equal rights under the law"), § 1982 ("Property rights of citizens"); § 1985 ("Conspiracy to interfere with civil rights"), as well as relief under applicable Puerto Rico law. Plaintiffs pray for this court to exercise supplemental jurisdiction over the local state claims.

As stated in the complaint, Mrs. Ortiz is a black Puerto Rican woman, in her early fifties, who alleges that, on October 15, 2004, at approximately 10:40 a.m., she and her granddaughter, a three (3) month old infant, who was wearing a wrist rattle, entered Toys "R" Us in San Juan, Puerto Rico, to effectuate a purchase. Mrs. Ortiz first directed herself to the Customer Service counter to request a gift list pertaining to a friend's baby shower. After obtaining the list, Mrs. Ortiz went to the store's baby department to preview items on the list. Unable to find a particular item that she was looking for, Mrs. Ortiz searched for an employee to assist her. However, the employee was already on her way, and approached Mrs. Ortiz accompanied by the store's security guard. The employee showed Mrs. Ortiz an empty wrist rattle package, identical to the one Mrs. Ortiz's granddaughter was wearing, and demanded that Mrs. Ortiz pay for the rattles when she arrived at the register. Mrs. Ortiz expressed surprise at the demand, at which point the employee made clear to Mrs. Ortiz that she was being accused of shoplifting. The employee was allegedly under the impression that the particular brand of wrist rattles in question was sold exclusively at Toys R Us, and for this reason did not believe Mrs. Ortiz's assertion that she bought the wrist rattles elsewhere. Mrs. Ortiz notes that at the moment in which the confrontation

occurred, Mrs. Ortiz was the only black woman in the store's baby department.

Mrs. Ortiz was prevented from leaving the store by the security guard and Toys R Us' employee. Mrs. Ortiz subsequently went to the check-out area and requested the presence of a store manager. Mrs. Ortiz asked the first manager to arrive at the scene to provide her with the phone number for the police. The manager responded that he did not know the number. Soon afterwards a second manager arrived. The second manager requested proof of purchase of the wrist rattles, or that Mrs. Ortiz return the merchandise. It is unclear from Mrs. Ortiz' factual allegations whether either manager was present when shortly thereafter the security guard asked Mrs. Ortiz whether she was Dominican, to which Mrs. Ortiz responded in the negative.[1]

The second manager then returned to the scene escorted by two police officers. The officers ordered Mrs. Ortiz to accompany them to the store's security area where a third police officer awaited them. Mrs. Ortiz was allegedly denied permission to leave the store to retrieve baby food for her granddaughter from her car, which was located in the store's parking lot. At this time, Mrs. García arrived at the scene.

Soon afterwards, Mrs. Ortiz' oldest daughter arrived at the store with four (4) baby products, one of them a wrist rattle identical to the one in controversy, of the same brand which the Toys "R" Us employee thought to be exclusive to Toys "R" Us, but purchased at a competing location. Police officers subsequently declared that there was no evidence of shoplifting against Mrs. Ortiz and she was then free to go. There are no allegations as to a formal arrest but the allegations clearly sustain a detention. Both managers then walked away from Mrs. Ortiz. When confronted by Mrs. Ortiz, the managers responded that their employees were always trying to improve at their jobs before continuing to walk away. The incident ended at approximately 1:00 p.m., therefore lasting a total of two (2) hours and twenty (20) minutes.

Mrs. Ortiz alleges that, based on the preceding facts, Toys "R" Us personnel impaired her ability to make and enforce a mercantile contract due to race and national origin discrimination, and that the events are thus actionable under 42 U.S.C. §§ 1981, 1982, and 1985. Mrs. García alleges that she is entitled to relief due to the mental anguish that she allegedly suffered when she arrived to find her mother and child detained at the store.

Defendant filed the instant *Motion to Dismiss* by alleging that the facts of the event fail to state a federal cause of action and that subject matter jurisdiction is lacking because the facts only give rise to a state action of tort under Article 802 of the Puerto Rico Civil Code. Mrs. Ortiz opposes dismissal by restating the facts presented above.

### Motion to Dismiss Standard

The standard for a Motion to Dismiss is rather simple.

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubts that plaintiff can prove no set of facts in support of his claim which will entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Plaintiff must at least set forth "factual allegations, either direct or inferential, regarding each material ele-

---

1. The allusion as to "Dominican" is not per se indicative race in pejorative or demeaning form as opposed to "boy". *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006).

ment necessary to sustain recovery under some actionable theory." *Romero–Barceló v. Hernández–Agosto,* 75 F.3d 23, 28, n. 2 (9th Cir.1996). Further, recently, the Supreme Court clarified that, the court must also examine at Motion to Dismiss level under Fed.R.Civ.P. 12(b)(6) whether the case also complies with Fed.R. Civ. P. 8(a) by "a showing rather than a blanket assertion of entitlement of relief." *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, n. 3, 167 L.Ed.2d 929 (2007). However, the court is not obligated to accept plaintiffs "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). The court must only accept "well pleaded facts" to justify the legal conclusions. *Litton Industries, Inc. v. Colón,* 587 F.2d 70, 74 (1st Cir.1978).

### 42 U.S.C. §§ 1981 and 1982

42 U.S.C. § 1981 states in pertinent part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts [ . . . ], and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens [ . . . ].

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." To state a claim under this statute, a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of his race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute. *Garrett v. Tandy Corporation,* 295 F.3d 94, 98 (1st Cir.2002).

A claim under 42 U.S.C. § 1982, property rights of citizens, states that: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens, thereof to inherit, *purchase,* lease, sell, hold and convey real and personal property." (Emphasis added). Due to the similar wording and common lineage of 42 U.S.C. §§ 1981 and 1982, the statutes are traditionally construed *in pari materia. Runyon v. McCrary,* 427 U.S. 160, 171, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *See also Garrett v. Tandy Corporation,* 295 F.3d 94, 102 (1st Cir.2002).

### 42 U.S.C. § 1985

The applicable portion of 42 U.S.C. § 1985 states:

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [ . . . ], in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or depriva-

tion, against any one or more of the conspirators.

■ To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996).

■ A conspiracy is an agreement between two or more persons, including the defendant, to commit an unlawful offense. *United States v. Moran,* 984 F.2d 1299, 1302 (1st Cir.1993); *United States v. Echeverri,* 982 F.2d 675, 679 (1st Cir.1993). "To determine whether a single agreement existed between a defendant and his coconspirators, courts consider the totality of the circumstances, paying particular heed to factors such as the existence of a common goal, evidence of interdependence among the participants, and the degree to which their roles overlap." *U.S. v. Fenton,* 367 F.3d 14, 19 (1st Cir.2004).

### Discussion

After carefully considering the facts as alleged by plaintiffs, the Court finds that the events that took place at Toys "R" Us on October 15, 2004, fail to reach the threshold of an actionable offense under 42 U.S.C. §§ 1981, 1982 or 1985. As such, Defendant's *Motion to Dismiss* is to be **GRANTED** under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and supplemental jurisdiction is **DENIED** over the claims arising under local statute as permitted by 28 U.S.C.A. § 1367(c)(3). The court explains.

### 42 U.S.C. §§ 1981 and 1982

■ In order to state a claim under 42 U.S.C. § 1981, the Plaintiff must show (1) that she is a member of a racial minority, (2) that the defendant discriminated against her on the basis of her race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute. *Tandy Corporation, supra* at 98; *See also Morris v. Dillard Dep't Stores, Inc.,* 277 F.3d 743, 751 (5th Cir.2001). Because Mrs. Ortiz has failed to plead facts which satisfy the third prong of the rule, the complaint must be dismissed as to section 1981.

The discriminative activity of which Defendant is charged is allegedly violating Mrs. Ortiz' right to make and enforce contracts. The First Circuit has upheld that a retail customer must plead that he or she was actually denied the ability to enter into a contract to satisfy the foundational pleading requirements of a suit under section 1981. *Garrett v. Tandy, supra* at 100–101. However, dampening a customer's ardor to effectuate a contract is not an actual loss of a contractual interest upon which relief can be granted. *Id.* at 102.

■ The facts as stated in the complaint do not show that Defendant refused to sell Mrs. Ortiz an item which she wished to purchase, nor that she was asked to leave the store before she completed her purchase, nor that she was refused service, nor that she was denied access to the store because of her race so that she could not effectuate such a purchase. *See e.g. Morris v. Dillard Department Stores,* 277 F.3d 743, (5th Cir.2001) (no contractual interest was lost where plaintiff left store of her own accord without attempting to make a purchase); *See also Christian v. Wal–Mart Stores,* 252 F.3d 862 (6th Cir.2001) (cause of action existed because plaintiff was asked to leave the store after being accused of shoplifting and could therefore

not complete her purchase). Instead, after evidence was shown to the store management that she did not shoplift the rattle as she was accused, management left her by herself inside the store. There are no allegations that Mrs. Ortiz, had she wished, could not consummate the purchase of the items she intended to buy. For this reason, we conclude that the complaint fails to state an actionable claim under 42 U.S.C. § 1981 and must therefore be dismissed as to this section of the law.

■ Because 42 U.S.C. § 1981 and § 1982 are traditionally construed *in pari materia*, the analysis of § 1981 in the context of this case applies with equal force to any claim Mrs. Ortiz has under section 1982. *Garrett v. Tandy* at 103. In other words, the facts set forth in the complaint fail to show that Mrs. Ortiz was unable to purchase personal property because she was racially discriminated against by store employees. Critical to our analysis is that under 42 U.S.C. § 1981 a plaintiff may choose to prove a claim under either direct evidence or by the judicially created burden shifting proof scheme as set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714, n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000) (§ 1981 claims). The case as seen under the *McDonnell Douglas* burden shifting scheme cannot surpass the articulation of a valid business reason in that Toys "R" Us, even if mistaken, detained her because they thought she was shoplifting an item.

As to a case based on *direct evidence* she must show the following:

(1) She is a member of a said minority.

(2) The defendant attempted to discriminate against her.

(3) The discrimination concerned a privilege against her under § 1981.

*Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 751 (5th Cir.2001). Plaintiff complies with the first and third requirements but falters as to the second requirement. The reason for her stoppage was not race but a valid articulated reason to the effect that she was thought to be shoplifting, even if later found to be mistaken. She failed to aver that the reason was a sham in that other non African Americans in the same position would not have received the same treatment. Hence, her claim is deficient in its allegations.

Therefore, Mrs. Ortiz's claim under 42 U.S.C. § 1982 must also be dismissed.

## 42 U.S.C. § 1985

■ Because Mrs. Ortiz makes bare assertions as to the existence of a conspiracy under § 1985 and does not plead any facts which support her allegation, her claim under 42 U.S.C. § 1985 must be dismissed. As was stated by the Supreme Court in *Bell Atlantic v. Twombly, supra,* that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Furthermore, "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* Even if allowed to proceed to discovery, the facts as pleaded by Mrs. Ortiz, do not reasonably raise the expectation that evidence will be found during discovery that the managers and employees of Toys "R" Us conspired to deprive Mrs. Ortiz of her right to make a purchase. For this reason, Mrs. Ortiz's claim under 42 U.S.C. § 1985 is dismissed. Moreover, there is no pleading that the

store's (company's) reason for her detainment constitutes a sham or pretext since the same action would not have been taken against non african persons.[2]

### Final Note

The Court notes that defendant's behavior towards plaintiffs, on the date of the events, however regrettable, does not constitute an actionable offense under 42 U.S.C. §§ 1981, 1982 or 1985. She has, however, a valid prima facie case against the defendant based on an illegal detention under Puerto Rican law under § 1802.

### Conclusion

For the reasons set forth above, defendants' *Motion To Dismiss* (Docket No. 23) is hereby granted. The Court, in its discretion, declines to exercise Supplemental Jurisdiction over claims arising under state law, as there is no actionable cause under federal law. *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995). Hence, this case is dismissed with prejudice as to federal claims, and dismissed without prejudice as to supplemental state claims. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

### AMENDED ORDER AS TO RECONSIDERATION

Pending before the Court are plaintiffs' *Motion for Reconsideration* (Docket No. 34), and defendant's Toys "R" Us Puerto Rico, Inc.'s ("Toys "R" Us") opposition (Docket No. 35). For the reasons set forth below, plaintiffs' motion for reconsideration is DENIED.

### Procedural Background

The Court entered an *Amended Opinion and Order* (Docket No. 32) dismissing with prejudice the federal claims, and dismissing without prejudice the supplemental state claims. The Court enjoys discretion to dispel supplemental jurisdiction over claims arising under state law, once the federal claims are dismissed prior to trial. 28 U.S.C. § 1367. A motion for reconsideration was timely filed by plaintiffs pursuant to Rule 59(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") (Docket No. 34). Plaintiffs allege that the Court erred in dismissing with prejudice the instant action, on the grounds that there are no actionable causes of action under federal law. Plaintiffs insist that they have met the threshold requirements under 42 U.S.C. §§ 1981, 1982 and 1985.

The facts are narrated in our *Amended Opinion and Order* (Docket No. 32), hence, there is no need to thoroughly repeat the factual landscape. In a nutshell, plaintiff Eva P. Ortiz–Rosario ("Ms. Ortiz") is a black Puerto Rican woman, in her early fifties, that claims that Toys "R" Us violated her federal constitutional rights by illegally detaining her for two hours and twenty minutes, at the store outlet in San Juan, Puerto Rico, on October 14, 2004.

Ms. Ortiz entered the Toys "R" Us store in San Juan with her granddaughter, who was wearing a wrist rattle at the time, to effectuate a purchase for a friend's baby shower, who had the gifts registered at defendant's store. "From the Baby Registry plaintiff selected a mirror and a thermostat." *Complaint*, Docket No. 1, ¶ 26. "As plaintiff could not locate the thermostat, she looked around

---

**2.** The instant case parallels the unpublished opinion of the 4th Circuit entered on February of 2004 in the case of *Johnson v. Toys "R" Us–Delaware Incorporated* found at 95 Fed. Appx. 1 (4th Cir.2004). In this case, under a similar factual scenario involving an Afro American shoplifter, the court denied a claim based on a summary judgment request.

for a store employee that could her locate [sic] it." *Complaint*, Docket No. 1, ¶ 27. "Plaintiff directed herself to defendant's employee 'Jessica' to ask her about the location of such item or that the employee make it available for her." *Complaint*, Docket No. 1, ¶ 28. "To her surprise, at the moment that plaintiff interacted with 'Jessica,' said employee was accompanied by a security guard. 'Jessica' showed the plaintiff an empty Sassy wrist rattle package [from the Toys "R" Us store] and told her to 'pay for the things (referring to the wrist rattles) when she arrived to the register machines.'" *Complaint*, Docket No. 1, ¶ 29. Plaintiff was puzzled and asked 'Jessica' what are the "things" that she "had to pay for." *Complaint*, Docket No. 1, ¶ 30. "'Jessica' insisted that she had to pay for the wrist rattles that she [sic] taken off the rack and placed on the child's wrist without paying for it." *Complaint*, Docket No. 1, ¶ 31. Although plaintiff insisted that she had purchased the baby rattle at Kmart, "Jessica" insisted that the "Sassy" brand products were exclusive to Toys "R" Us. *Complaint*, Docket No. 1, ¶ 33. Plaintiff alleges that the accusation was made in public, and that "the security guard prevented plaintiff from leaving the store." *Complaint*, Docket No. 1, ¶ 34.

Defendant's management moved Ms. Ortiz and her granddaughter to the security area until three agents of the Puerto Rico Police Department showed up in response to a call from the store's manager reporting a robbery at the store. *Complaint*, Docket No. 1, ¶ 43. Shortly thereafter, plaintiff's daughter and the mother of the baby arrived at the store. *Complaint*, Docket No. 1, ¶ 41. Much later, Ms. Ortiz' oldest daughter also arrived at the scene "with 4 packages of 'Sassy' brand items purchased at K-mart, including a wrist rattle identical to the one worn by the baby, and showed them to all present Toys

"R" Us manager and the police officers." *Complaint*, Docket No. 1, ¶ 45. "Putting in evidence the falseness of the store employees and managers allegations that the 'Sassy' brand products were exclusive to Toys "R" Us." *Complaint*, Docket No. 1, ¶ 45. "The police officers stated that there was no evidence of any shoplifting by the plaintiff and that she should pursue a claim against the store for civil rights violation." *Complaint*, Docket No. 1, ¶ 46. "The store managers started to walk away immediately." *Complaint*, Docket No. 1, ¶ 47. The instant action followed on October 14, 2005.

### Applicable Law and Discussion

### The Standard for a Motion for Reconsideration

■ "A court appropriately may grant a motion for reconsideration 'where the movant shows a manifest error of law or newly discovered evidence.'" *Ruiz Rivera v. Pfizer Pharmaceuticals, LLC*, 521 F.3d 76, 81–82 (1st Cir.2008) (quoting *Kansky v. Coca-Cola Bottling Company of New England*, 492 F.3d 54, 60 (1st Cir.2007)). "Likewise, a motion for reconsideration should be granted if the court 'has patently misunderstood a party . . . or has made an error not of reasoning but apprehension.'" *Ruiz Rivera*, 521 F.3d at 82 (quoting *Sandoval Díaz v. Sandoval Orozco*, No. 01–1022, 2005 WL 1501672, at *2 (D.P.R. June 24, 2005) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990))).

■ Motions for reconsideration are generally considered either under Rules 59 or 60 of the Fed.R.Civ.P., depending on the time such motion is served. *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 284 (1st Cir.1993). It is settled that "[a] motion for reconsideration 'does not provide a vehicle for a party to undo its own procedural failures and it certainly

does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to the judgment.'" *Marks 3–Zet–Ernst Marks GMBH & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15–16 (1st Cir.2006). Thus, a motion for reconsideration cannot be used as a vehicle to relitigate matters already litigated and decided by the Court. *Standard Quimica De Venezuela v. Central Hispano International, Inc.*, 189 F.R.D. 202, n. 4 (D.P.R. 1999). These motions are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in law. *See Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir.1994) *citing F.D.I.C. v. World University, Inc.*, 978 F.2d 10, 16 (1st Cir.1992); *Cherena v. Coors Brewing Com.*, 20 F.Supp.2d 282, 286 (D.P.R.1998); *see also National Metal Finishing Com. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 124 (1st Cir.1990). "Rule 59 motions are 'aimed at *re* consideration, not initial consideration.'" (Citations omitted). *Federal Deposit Insurance Corporation v. World University Inc.*, 978 F.2d 10, 16 (1st Cir.1992). "Thus, parties should not use them to 'raise arguments which could, and should, have been made before judgment issued.'" (Citation omitted). *Id.* "Motion under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." (Citation omitted). *Id.* "They may not be used to argue a new legal theory." *Id.* Hence, this vehicle may not be used by the losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." *Id.* at 123.

In the instant case, plaintiffs allege that: (a) the Court incurred in an error of law; and (b) based upon the new evidence provided by plaintiffs, the reconsideration is warranted. The Court has carefully evaluated the matter considering the seriousness of the charge alleged in the complaint, and counsel's sincere effort.

### Analysis

Plaintiffs moved for reconsideration of the Court's dismissal of the complaint on the grounds that there are no actionable causes of action under 42 U.S.C. §§ 1981, 1982 and 1985. In support of their argument, plaintiffs rehashed that the defendant "had unlawfully interfered and impaired her right to make and enforce a contract in violation of 42 U.S.C. § 1981, through the **illegal detention** as a result of what is known as Consumer Racial Profiling." Docket No. 34 at page 9. (Emphasis ours). Plaintiffs also alleges that "Mrs. Ortiz ... was actually interferred [sic] from culminating her purchasse [sic] when she was **illegally detained** by the store employees whom has not actually seen her comit [sic] any felony, but whom detained her upon the clerk's hunch, and went as far as calling the police upon her to officiallize [sic] her detention for shoplifting." Docket No. 34 at page 11. (Emphasis ours). "Such well pleaded facts constitute the adecquate [sic] pleadings for the actual loss of a contract interest for a § 1981 claim for interference with the right to make and enforce a contract." Docket No. 34 at page 11.

Plaintiffs further alleges that "evidence obtained after the motion to dismiss was filed includes official Toys "R" Us describing that the store Clerk who initiated the chain of events was dismissed from employment shortly thereafter precisely because her conduct was improper." Docket No. 34 at page 11. This evidence is not admissible in court at trial, as post determination measures made by defendant are not admitted to establish prior liability. *See* Rule 407 of the Federal

Rules of Evidence ("Fed.R.Evid.").[1] *See also Moulton v. Rival Co.*, 116 F.3d 22 (1st Cir.1997); *Bogosian v. Mercedes–Benz of North America, Inc.*, 104 F.3d 472 (1st Cir.1997). Hence, if the evidence is not admissible at trial, it is also not admissible for pretrial motion purposes. "Also in said discovery of evidence the defendant has not been able to provide a non-discriminatory motivation for the **intervention and detention** of Mrs. Ortiz." Docket No. 34 at pages 11–12. (Emphasis ours). "The defendants actions of **detaining** her while expressing the ratially [sic] explicit motivation and that she could not freely leave the are [sic] where she was **detained** clearly constitute an actuall [sic] prevention, and not merely deterrance, from making the purchase fo the gift she intended to acquire from the store." Docket No. 34 at page 12. (Emphasis ours). Plaintiffs further alleges that "[t]he Legal standard established does not require that the plaintiff set forth evidence to the fact that the defendants told her that they would not sell te [sic] items to her, but merely that their discriminatory actions intefeered [sic] and impeeded [sic] her from completing her intention to purchasse [sic]." Docket No. 34 at page 12. (Emphasis ours). The Court disagrees, and explains.[2]

### The 42 U.S.C. §§ 1981 and 1982 Standards

42 U.S.C. § 1981 states in pertinent part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts [ . . . ], and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens [ . . . ].

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." To state a claim under this statute, a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of his race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute. *Garrett v. Tandy Corporation*, 295 F.3d 94, 98 (1st Cir.2002).

As stated in our *Amended Opinion and Order* (Docket No. 32), a claim under 42 U.S.C. § 1982, property rights of citizens, states that: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens, thereof to inherit, *purchase*, lease,

---

1. Fed.R.Evid. 407 provides:
   When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

2. Plaintiff Ms. Ortiz could have simply paid for the wrist rattle initially, and seek reimbursement later, after Ms. Ortiz' elder daughter brought in to Toys "R" Us other "Sassy" items, including a wrist rattle similar or identical to the one wore by Ms. Ortiz' granddaughter, that were purchased elsewhere. This fact *per se* shows that plaintiff was not impeded from purchasing the other items she wished to purchase.

sell, hold and convey real and personal property." (Emphasis added). Due to the similar wording and common lineage of 42 U.S.C. §§ 1981 and 1982, the statutes are traditionally construed *in pari materia. Runyon v. McCrary,* 427 U.S. 160, 171, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *See also Garrett,* 295 F.3d at 102.

The Court reiterates the legal analysis made in the *Amended Opinion and Order* (Docket No. 32). "The critical question, however, is whether the facts alleged in the appellants's complaint, taken in the light most flattering to his theory of the case, show a sufficient nexus between the asserted discrimination and some contractual right or relationship." *Garrett,* 295 F.3d at 98. In the instant case, the facts of the complaint are well articulated and meet the threshold test set forth in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that is, plausible facts as opposed to conceivable facts, but it fails to state an actionable cause of action. "[W]e do not require heightened fact pleading of specifics, **but only enough facts to state a claim to relief that is plausible on its face.** Because the plaintiffs here have not **nudged their claims across the line from conceivable to plausible,** their complaint must be dismissed." *Twombly,* (Emphasis ours).

A review of the complaint clearly shows that the incident suffered by Ms. Ortiz, *albeit* deplorable, it is by plaintiffs' own admission a case of an illegal detention triggered by a human error of Toys "R" Us. The Court sympathizes with Ms. Ortiz, but reaffirms its ruling that there is no cause of action under 42 U.S.C. §§ 1981, 1982. The Court finds that the facts as pled in the complaint fail to show that it is plausible as opposed to conceivable, that the defendant asked Ms. Ortiz to pay for the wrist rattle **only** because she was a

black Puerto Rican woman. In other words, that the incident was purported only for racial discrimination motives.

The complaint is devoid of any factual allegations that state that Ms. Ortiz was called names, racial epithets, mistreatment due to racial origin, harassment due to racial origin, or even that she was deprived to purchase any merchandise in the store. The facts in the complaint clearly show that when the defendant's store manager realized that a mistake had been committed, Ms. Ortiz was immediately freed. Whether Ms. Ortiz chose not to complete her purchase at defendant's store at the time, was her own voluntary decision. Moreover, none of the facts pled in the complaint show that defendant interfered, at any time, with Ms. Ortiz' prospective contractual relation to purchase the desired merchandise. "So long as watchfulness neither crosses the line into harassment nor impairs a shopper's ability to make and complete purchases, it is not actionable under section 1981." *Garrett,* 295 F.3d at 101. In *Garrett,* the Court also held:

[I]n order to satisfy the foundational pleading requirements for a suit under section 1981, a retail customer must allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus. *Morris v. Dillard Department Stores, Inc.,* 277 F.3d 743, 752 (5th Cir.2001); *Hampton v. Dillard Department Stores, Inc.,* 247 F.3d 1091, 1118 (10th Cir.2001), *cert. denied,* 534 U.S. 1131 [122 S.Ct. 1071, 151 L.Ed.2d 973] (2002); *Morris v. Office Max, Inc.,* 89 F.3d 411, 414 (7th Cir.1996).

In sum, even if the Court were to take into consideration the "new evidence" alleged by plaintiffs in their request for re-

consideration, this will not change the legal standard under 42 U.S.C. §§ 1981 and 1982, as to the "alleged discrimination" and Ms. Ortiz' prospective purchase of merchandise at Toys "R" Us. The Court is not persuaded by plaintiffs' arguments raised in the motion for reconsideration, as to a possible violation of a federal constitutional right, hence, plaintiffs' request is denied.

### Commercial Racial Profiling

Ms. Ortiz alleges that "she was also **illegally detained** as a result of what is known as Consumer Racial Profiling." Docket No. 34 at page 14. The Court disagrees. First, all the allegations stated in the complaint as to Consumer Racial Profiling (Docket No. 1, ¶¶ 50–57), are mere bold conclusory allegations. As stated above, said allegations are devoid of racial nexus facts between the alleged racial discrimination and Ms. Ortiz' right to purchase merchandise at defendant's store.

The facts as pled only show that Ms. Ortiz was illegally detained because the defendant's employee found some empty packages of wrist rattles that matched the wrist rattles that Ms. Ortiz' granddaughter had at the time of entering the defendant's store. In addition, defendant wrongfully insisted that the "Sassy" brand was an exclusive item of the store. However, there is not a single allegation in the complaint that shows or even give notice to the defendant, that indeed Toys "R" Us prohibited or prevented Ms. Ortiz from entering the store, purchasing the desired merchandise, or even that she was asked to leave the store. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) ("Specific facts are not necessary; the **statements need only 'give the defendants fair notice of what the ... claim is and the grounds upon which it rests'**") (quoting *Twombly,* 127

S.Ct. at 1964) (emphasis ours). *See also Morris v. Dillard Department Stores, Inc.,* 277 F.3d 743 (5th Cir.2001); *Morris v. Office Max, Inc.,* 89 F.3d 411 (7th Cir. 1996); *Bagley v. Ameritech Corp.,* 220 F.3d 518 (7th Cir.2000); *Wesley v. Don Stein Buick, Inc.,* 42 F.Supp.2d 1192, 1199–1200 (D.Kansas 1999); *Ackaa v. Tommy Hilfiger Co.,* No. 96–8262, 1998 WL 136522, at *3 (E.D.Pa. Mar. 24, 1998); *Sterling v. Kazmierczak,* 983 F.Supp. 1186, 1191–1192 (N.D.Ill.1997); *Lewis v. J.C. Penney Company, Inc.,* 948 F.Supp. 367, 370–371 (D.Del.1996).

The Court finds that the complaint is full of factual allegations related to Ms. Ortiz' illegal detention, as emphasized by the Court herein above, but it is devoid of any facts showing that the unfortunate incident was triggered by Ms. Ortiz' racial origin. This Court is not alone in this finding. "[O]ther circuits that have considered the issue [section 1981 liability in the retail transaction context] are in unanimous agreement that surveillance of a customer, even if discriminatory, is not actionable under section 1981(a), so long as the customer is not harassed or actually prevented from consummating a transaction." *Pierre v. JC Penney Company, Inc.,* No. 03–4782, 2006 WL 407553, at *4 (E.D.N.Y. February 21, 2006) (containing a compendium of circuit and district court cases).

### The 42 U.S.C. § 1985 Standard

The Court hereby reiterates the legal analysis made in the *Amended Opinion and Order* (Docket No. 32), and reaffirms that plaintiffs failed to meet the required § 1985 threshold standard. The facts alleged in the complaint failed to show that there was a conspiracy by defendant against Ms. Ortiz to deprive her of a federal constitutional protected right. Even considering plaintiffs' alleged "new evidence," the fact that the employee involved in the incident with plaintiffs was dis-

missed from the company: (a) is a conclusory and bold statement, as the employee could have been dismissed simply for misidentifying the wrist rattle item as an exclusive Toys "R" Us product, when in fact it was not (further, as discussed *infra*, this evidence is not admissible); and (b) is insufficient to show that there was indeed a conspiracy between the managers and employees of Toys "R" Us to deprive Ms. Ortiz of her constitutional right to purchase the desired merchandise at defendant's store. But, most critical, there are no facts that show a racial *animus* conspiracy to deprive Ms. Ortiz from making a purchase, or re-entering the store to make a purchase. Hence, the Court finds that there is no actionable cause of action under 42 U.S.C. § 1985.

### Supplemental Jurisdiction

■ Ms. Ortiz has a colorable actionable cause of action under state law based on an illegal detention, as well as other local actionable causes, as explained by the Court in its *Amended Opinion and Order* (Docket No. 32). The Court declines to exercise supplemental jurisdiction over claims arising under state law when there is an early determination as to the absence of an actionable cause of action under federal law. *See Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) (standing for the general proposition that early disposal of all federal claims, "well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims").

### Conclusion

In view of the foregoing, plaintiffs' *Motion for Reconsideration* (Docket No. 34), is hereby DENIED.

IT IS SO ORDERED.